UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------
In re:                                        :     Chapter 11
                                              :
ARENA MEDIA NETWORKS, LLC,                    :     Case No. 10-10667(BRL)
                                              :
                    Debtor.                   :
                                              :
---------------------------------------------------------

**ORDER ESTABLISHING BIDDING PROCEDURES AND RELATED RELIEF
REGARDING THE SALE OF CERTAIN OF THE DEBTOR'S ASSETS,
<u>AND NOTICE THEREOF</u>**

Upon consideration of the Motion (the "<u>Motion</u>") of Arena Media Networks, LLC, the "<u>Debtor</u>") dated February 8, 2010, for entry of an order, pursuant to Sections 105, 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101 <u>et</u> <u>seq</u>. (the "<u>Bankruptcy Code</u>"), establishing (a) Bid Procedures (as defined in the Motion), including manner and form of notice to be applied during a sale of certain assets of the Debtor and assumption and assignment of related executory contracts, (b) date for auction ("<u>Auction</u>"), (c) date for hearing to consider approval of the Auction results (the "<u>Sale Hearing</u>"), and granting related relief; and sufficient cause appearing therefore, and it further appearing that sufficient notice of the Motion as required having been given, as evidenced by the proof of service filed on February 8, 2010; and it further appearing that this Court has jurisdiction to grant the requested relief pursuant to 28 U.S.C. §§ 157 and 1334; and after considering all objections to the Motion (the "<u>Objections</u>"); and a hearing having been held on February 18, 2010, to consider the relief requested in the Motion and all other proceedings had before the Court; and it further appearing that the relief requested in the Motion is reasonable and necessary under the circumstances to protect the interests of the Debtors, their estates, and creditors in connection with the proposed sale of certain assets in accordance with the Auction; and it appearing that an order establishing Bid

Procedures, fixing and approving the notice and scheduling the Auction and Sale Hearing is in the best interests of the Debtor and parties in interest; and after due deliberation and sufficient cause appearing therefor, IT IS HEREBY ORDERED THAT:

1. The Motion is GRANTED as set forth below. All objections to the Motion that have not been settled or withdrawn are hereby overruled.

2. The time period for notice pursuant to Bankruptcy Rule 2002(a) of a sale of certain of the Debtors' assets is hereby reduced to accommodate the sale as set forth in the Motion.

3. The following deadlines, protections, and procedures (the "<u>Bidding Procedures</u>") are approved and established in connection with the Debtor's contemplated sale of the Purchased Assets[1]:

    (a) Offers for the Assets shall be governed by the following Bidding Procedures:

        (1) Any entity that wishes to make a bid for Assets must provide the Debtor with sufficient and adequate information to demonstrate, to the absolute satisfaction of the Debtor that such offeror (i) has the financial wherewithal and ability to consummate the Sale Transaction including evidence of adequate financing, and including a financial guaranty, if appropriate, (ii) can provide all non-debtor contracting parties to the Designated Contracts with adequate assurance of future performance as contemplated by section 365 of the Bankruptcy Code; (iii) be on substantially the same terms and conditions as the Asset Purchase Agreement except for price; (iv) require the payment of a purchase price to the Debtor of not less than $6.6 million (the "<u>Topping Price</u>"); (v) be accompanies by an earnest money deposit of 10% of the offer; and (vi) be filed with the Court and served upon the Debtor and Purchaser on or before March 16, 2010. Any party satisfying such criteria shall be designated as a "<u>Qualified Party</u>." Any Qualified Party shall be permitted to conduct reasonable due diligence for purposes of making a offer ("<u>Qualified Offer</u>"), subject to executing an appropriate confidentiality agreement.

---

[1] All capitalized terms not otherwise defined in this Order have the meanings ascribed to such terms in the Sale Motion or the Asset Purchase Agreement.

(2) The Debtor shall entertain Qualified Offers that are substantially the same terms and conditions as those terms set forth in the Asset Purchase Agreement and the documents set forth as exhibits thereto.

(3) BNYH shall not submit a Qualified Offer, including an offer to "bid-in" its secured debt, which is in excess of $15 million, as against Purchaser/Lender only.

(4) Qualified Offers related to the Debtor must (a) be in writing and (b) be received by Ian R. Winters, Esq. of Klestadt & Winters, LLP, 292 Madison Avenue, 17th Floor, New York, New York 10017 so that such bid is received by such parties no later than March 16, 2010 at 5 p.m. (the "Qualified Offer Deadline"). Parties not submitting Qualified Offers by the Qualified Offer Deadline shall not be permitted to participate at the Auction.

(5) Qualified Offers must be accompanied by a good faith deposit in the amount of 10% of the Qualified Offer, in the form of a certified or cashier's check made payable to KLESTADT & WINTERS, LLP ESCROW MANAGEMENT ACCOUNT. All such deposits shall be retained by the Debtor pending the hearing to consider the Sale Motion and shall be returned ten (10) days after entry of an order by the Court approving the Sale, except that the Debtor shall hold the deposit of the winning bidder (as determined by the Debtor and accepted by the Court) ("Winning Bidder") and apply such deposit to the Purchase Price at closing. Purchaser shall not be required to post a deposit.

(6) Any Qualified Offer by a Qualified Party conforming to the within requirement shall be considered at the auction to be held at the auction to be held at the Offices of Klestadt & Winters, LLP, 292 Madison Avenue, 17th Floor, New York, NY 10017-6314, in a room to be announced, or in such manner and at such alternative location as the Debtor may determine or the Court may direct, on March 18, 2010 commencing at 10:00a.m. (EST) (the "Auction").

(7) The Debtor shall, after the Qualified Offer Deadline and prior to the Auction, evaluate all bids received, and determine which bid reflects the highest or best offer for the Assets. The Debtor shall announce such determination at the commencement of the Auction and then the Debtor shall conduct the Auction among the parties submitting Qualified Offers to determine if any higher or better offer might be obtained. Any further bids made at the Auction shall be in increments of at least $150,000 greater than the preceding bid.

(8) If there is a successful Qualified Offer for the Assets, such successful bidder shall be bound by all of the terms and conditions of the Agreement with appropriate modifications for (i) the identity of the successful bidder and (ii) the purchase price as the same shall have been increased at the Auction.

(9) In the event that the Asset Purchase Agreement is terminated because the Court approves an Alternative Transaction or an Alternative Transaction is consummated or there has been a material breach by the Debtor in closing on the

Asset Purchase Agreement as detailed in Article XI of the Asset Purchase Agreement, the Debtor shall pay Purchaser a fee of 3.0 percent of the Purchase Price inclusive of costs of assumption of debt currently estimated at $5.2 million and the Purchase DIP Claim, with a floor of no less than $180,000 (the "Break-Up Fee"), plus reimbursement of Purchaser's expenses, including attorneys, investment banking, accountant and other professional fees and expense incurred in pursuit of its bid and preparation of the Asset Purchase Agreement and related documents ("Expense Reimbursement"), not to exceed $300,000, to compensate the Purchaser for its efforts in connection with it being the "stalking horse" bidder for the Acquired Assets, including the costs of the Purchaser incurred in performing due diligence, negotiating and documenting the terms of this Agreement and the DIP Financing and representing its interests with respect to the proposed sale and the Debtor's Bankruptcy Case. The Purchaser shall provide the Court, the Debtor, the Office of the United States Trustee, and any Official Committee of Unsecured Creditors that may be formed with notice of its proposed expense reimbursement for review and approval prior to payment. The Break-Up Fee and Reimbursement Expense shall constitute a first priority administrative expense of the Debtor pursuant to Section 503(b) and shall be paid within two (2) days of any closing in connection with the Acquired Assets and without further order or application to the Court.

(10) In the event that a Qualified Offer is the Winning Bidder and such Winning Bidder fails to consummate the proposed transaction by the Closing Date, such bidder's deposit shall be forfeited to the Debtor (but not as liquidated damages, the Debtor reserving the right to pursue all remedies that may be available to it) and the Debtor shall be free to consummate the proposed transaction with the next highest bidder at the final price bid by such bidder at the Auction (or, if that bidder is unable to consummate the transaction at that price, the Debtor may consummate the transaction with the next higher bidder, and so forth) without the need for an additional hearing or order of the Court.

(11) All bids for the purchase of the Debtor's assets shall be subject to approval of the Court.

(12) No bids shall be considered by the Debtor or the Bankruptcy Court unless a party submitted a Qualified Offer in accordance with the Bidding Procedures and participated in the Auction. The Debtor, in its absolute discretion, but after consultation with the Office of the United States Trustee and any Official Committee of Unsecured Creditors as may be formed, may reject any Qualified Offers not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules or the Local Bankruptcy Rules of the Court, or contrary to the best interests of the Debtor and parties of interest.

(13) All bids are irrevocable until the earlier to occur of: (i) the closing of the Sale Transaction, or (ii) fifteen (15) days following the last date of the Auction (as may be adjourned).

(14) All bids are subject to such other terms and conditions as are announced by the Debtor at the outset of the Auction.

4. No later than three (3) days after entry of this Order, the Debtor shall (a) serve a copy of the Sale Motion and the Sale Notice, substantially in the form annexed hereto as <u>Exhibit A</u> (which form is hereby approved) together with a copy of this Order, by first class U.S. mail upon (i) the Office of the United States Trustee, (ii) all of the Debtor's creditors, (iii) all non-debtor contracting parties with respect to the Designated Contracts, (iv) all parties who have been previously contacted in connection with the Debtor's sale and marketing efforts, (v) all appropriate federal, state and local taxing authorities, (vi) all known persons holding a lien on any of the Assets, (vii) to each person or entity that has filed a notice of appearance in this case; and (b) serve a copy of the Cure Notice on each counterparty to the Designated Contracts by first class U.S. mail; and (c) the Debtor shall provide notice by electronically filing this Bid Procedures Order and approved Sale Notice on the Court's ECF system located at www.nysb.uscourts.gov.

5. Such service as provided in the previous paragraph is hereby deemed due, timely, good and sufficient notice of the entry of this Bid Procedures Order, the Auction, the Sale Motion, the Sale Hearing and all proceedings to be held thereon and matters related thereto.

6. Responses or objections, if any, to the relief requested in the Sale Motion (other than objections based upon cure claims discussed below) must be in writing, must state the name of the objecting party, must state with particularity the reasons and basis for the objection, and be (a) filed with the Court and (b) served upon (i) the attorneys for the Debtor, Klestadt & Winters, LLP, 292 Madison Avenue, 17th Floor, New York, New York 10017 (Attn: Ian R. Winters, Esq.), (ii) the Office of the United States Trustee, 33 Whitehall Street, 21st Floor, New York, NY 10004 and (iii) the attorneys for the Purchaser, Sheppard, Mullin, Richter & Hampton, 30

Rockefeller Plaza, Suite 2400, New York, NY 10112 (Attn: Carren B. Shulman, Esq.) so as to be actually received by such persons no later than March 16 at 5:00 p.m. (the "Objection Deadline"). Any reply by the Debtor shall be served and filed no later than March 18, 2010 at 5 p.m.

7. Any and all objections to the Cure Amounts ("Cure Objection(s)") must be in writing, filed with the Court, and actually received by (i) the attorneys for the Debtor, Klestadt & Winters, LLP, 292 Madison Avenue, 17th Floor, New York, New York 10017 (Attn: Ian R. Winters, Esq.), (ii) the Office of the United States Trustee, 33 Whitehall Street, 21st Floor, New York, NY 10004 and (iii) the attorneys for the Purchaser, Sheppard, Mullin, Richter & Hampton, 30 Rockefeller Plaza, Suite 2400, New York, NY 10112 (Attn: Carren B. Shulman, Esq.), so as to be actually received no later than 12:00 Noon (EST) on the deadline date set for objections to the Sale Motion (the "Cure Objection Deadline").

8. The Cure Objection(s) shall set forth the cure amounts or obligations that the objecting party asserts have accrued and/or are due, the specific types and dates of the alleged cure amounts, obligations, defaults, pecuniary losses, and conditions to assignment, and the support therefor.

9. Unless a Cure Objection is filed and served by a party to a Designated Contract or a party interested in a Designated Contract by the Cure Objection Deadline, all interested parties who have received actual or constructive notice hereof shall be deemed to have waived and released any right to assert a Cure Objection and to have otherwise consented to the assignment of the Designated Contracts and shall be forever barred and estopped from asserting or claiming against the Debtors or Winning Bidder or any other assignee of the relevant Designated Contract

that any additional amounts are due or default exists, or conditions to assignment must be satisfied, under such Designated Contracts for the period prior to the date of the Closing.

10. Hearings with respect to Cure Objections may be held: (a) at the Sale Hearing; or (b) at such other date as the Court may designate, provided that if the subject Designated Contract is assumed and assigned, the Debtors shall deposit the cure amount asserted by the objecting party (or such lower amounts as may be fixed by the Court) in a segregated account held by the Debtors and or such other person as the Court may direct pending further order of the Court or mutual agreement of the parties.

11. A properly filed and served Cure Objection shall reserve such party's rights against the Debtors (but not against the Purchaser or any other purchaser of the Assets and the Designated Contracts) respecting the Cure Obligation, but shall not constitute an objection to the remaining relief generally requested in the Sale Motion.

12. The Sale Hearing shall be held on March 22, 2010, at 10:00 a.m., or as soon thereafter as counsel may be heard, at the United States Bankruptcy Court, One Bowling Green, Courtroom 623, New York, New York 10004.

13. This Order shall become effective immediately upon its entry.

14. The Court shall retain jurisdiction over any matter or dispute arising form or relating to the implementation of this Order.

Dated: New York, New York
      February 18, 2010

                          *s/ Burton R. Lifland*
                          UNITED STATES BANKRUPTCY JUDGE

Klestadt & Winters, LLP
Ian R. Winters
Joseph C. Corneau
Samir P. Gebrael
292 Madison Avenue, 17th Floor
New York, NY 10017-6314
Tel. (212) 972-3000
Fax. (212) 972-2245

*Proposed Counsel for the Debtor and Debtor-in-Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| ARENA MEDIA NETWORKS, LLC, | : | Case No. 10-10667(BRL) |
| | : | |
| Debtor. | : | |
| | : | |

### NOTICE OF SALE OF CERTAIN OF DEBTOR'S ASSETS, AND BIDDING PROCEDURES AND AUCTION RELATED THERETO

**PLEASE TAKE NOTICE** that, on February 18, 2010, the United States Bankruptcy Court for the Southern District of New York (the "**Court**") entered an Order (the "**Order**"), granting, in part, the motion (the "**Motion**") filed with the Court by Arena Media Networks, LLC, the above-captioned debtor and debtor-in-possession (the "**Debtor**") for an order (I)(A) approving sale of certain of the Debtor's assets (the "**Assets**") free and clear of all liens, claims, encumbrances, and other interests pursuant to sections 105, 363(b), (f), and (m) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), and approving the form of Asset Purchase Agreement, as such agreement may have been amended (the "**Purchase Agreement**"),[1] by and between the Debtor and Access 360 Media, Inc. (the "**Purchaser**"), and (B) authorizing the assumption, assignment, and sale of certain executory contracts pursuant

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

-1-

sections 363 and 365 of the Bankruptcy Code, (II) approving bidding procedures, break-up fee, and other protections and (III) granting related relief.

Pursuant to the Order, an auction for the Assets will take place on March 18, 2010 at 10:00 a.m. at the law offices of Klestadt & Winters, LLP, 292 Madison Avenue, 17th Floor, New York, NY 10017-6314. The Auction will be transcribed. The Auction may adjourned by announcement of the adjournment at the Auction to those parties who appear thereat.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Order, the following procedures (the "**Bid Procedures**") shall govern the sale of the Assets:

(1) Any entity that wishes to make a bid for Assets must provide the Debtor with sufficient and adequate information to demonstrate, to the absolute satisfaction of the Debtor that such offeror (i) has the financial wherewithal and ability to consummate the Sale Transaction including evidence of adequate financing, and including a financial guaranty, if appropriate, (ii) can provide all non-debtor contracting parties to the Designated Contracts with adequate assurance of future performance as contemplated by section 365 of the Bankruptcy Code; (iii) be on substantially the same terms and conditions as the Asset Purchase Agreement except for price; (iv) require the payment of a purchase price to the Debtor of not less than $6.6 million (the "Topping Price"); (v) be accompanies by an earnest money deposit of 10% of the offer; and (vi) be filed with the Court and served upon the Debtor and Purchaser on or before March 16, 2010. Any party satisfying such criteria shall be designated as a "Qualified Party." Any Qualified Party shall be permitted to conduct reasonable due diligence for purposes of making a offer ("Qualified Offer"), subject to executing an appropriate confidentiality agreement.

(2) The Debtor shall entertain Qualified Offers that are substantially the same terms and conditions as those terms set forth in the Asset Purchase Agreement and the documents set forth as exhibits thereto.

(3) BNYH AMN Holdings, LLC shall not submit a Qualified Offer, including an offer to "bid-in" its secured debt, which is in excess of $15 million, as against Purchaser only.

(4) Qualified Offers related to the Debtor must (a) be in writing and (b) be received by Ian R. Winters, Esq. of Klestadt & Winters, LLP, 292 Madison Avenue, 17th Floor, New York, New York 10017 so that such bid is received by such parties no later than March 16, 2010 at 5 p.m. (the "Qualified Offer Deadline"). Parties not submitting Qualified Offers by the Qualified Offer Deadline shall not be permitted to participate at the Auction.

(5) Qualified Offers must be accompanied by a good faith deposit in the amount of 10% of the Qualified Offer, in the form of a certified or cashier's check made payable to KLESTADT & WINTERS, LLP ESCROW MANAGEMENT ACCOUNT. All such deposits shall be retained by the Debtor pending the hearing to consider the Sale Motion and shall be returned ten (10) days after entry of an order by the Court approving the Sale, except that the Debtor shall hold the deposit of the winning bidder (as determined by the Debtor and accepted by the Court) ("Winning Bidder") and apply such deposit to the Purchase Price at closing. Purchaser shall not be required to post a deposit.

(6) Any Qualified Offer by a Qualified Party conforming to the within requirement shall be considered at the auction to be held at the auction to be held at the Offices of Klestadt & Winters, LLP, 292 Madison Avenue, 17th Floor, New York, NY 10017-6314, in a room to be announced, or in such manner and at such alternative location as the Debtor may determine or the Court may direct, on March 18, 2010 commencing at 10:00a.m. (EST) (the "Auction").

(7) The Debtor shall, after the Qualified Offer Deadline and prior to the Auction, evaluate all bids received, and determine which bid reflects the highest or best offer for the Assets. The Debtor shall announce such determination at the commencement of the Auction and then the Debtor shall conduct the Auction among the parties submitting Qualified Offers to determine if any higher or better offer might be obtained. Any further bids made at the Auction shall be in increments of at least $150,000 greater than the preceding bid.

(8) If there is a successful Qualified Offer for the Assets, such successful bidder shall be bound by all of the terms and conditions of the Agreement with appropriate modifications for (i) the identity of the successful bidder and (ii) the purchase price as the same shall have been increased at the Auction.

(9) In the event that the Asset Purchase Agreement is terminated because the Court approves an Alternative Transaction or an Alternative Transaction is consummated or there has been a material breach by the Debtor in closing on the Asset Purchase Agreement as detailed in Article XI of the Asset Purchase Agreement, the Debtor shall pay Purchaser a fee of 3 percent of the Purchase Price inclusive of costs of assumption of debt currently estimated at $5.2 million and the Purchase DIP Claim, with a floor of no less than $180,000 (the "Break-Up Fee"), plus reimbursement of Purchaser's expenses, including attorneys, investment banking, accountant and other professional fees and expense incurred in pursuit of its bid and preparation of the Asset Purchase Agreement and related documents ("Expense Reimbursement"), in an amount not to exceed $300,000, to compensate the Purchaser for its efforts in connection with it being the "stalking horse" bidder for the Acquired Assets, including the costs of the Purchaser incurred in performing due diligence, negotiating and documenting the terms of this Agreement and the DIP Financing and representing its interests with respect to the proposed sale and the Debtor's Bankruptcy Case. The Purchaser shall provide the Court, the Debtor, the Office of the United States Trustee, and any Official Committee of Unsecured Creditors that may be formed with notice of its proposed expense reimbursement for review and approval prior to payment. The Break Up Fee and

Reimbursement Expense shall constitute a first priority administrative expense of the Debtor pursuant to Section 503(b) and shall be paid within two (2) days of any closing in connection with the Acquired Assets and without further order or application to the Court.

(10) In the event that a Qualified Offer is the Winning Bidder and such Winning Bidder fails to consummate the proposed transaction by the Closing Date, such bidder's deposit shall be forfeited to the Debtor (but not as liquidated damages, the Debtor reserving the right to pursue all remedies that may be available to it) and the Debtor shall be free to consummate the proposed transaction with the next highest bidder at the final price bid by such bidder at the Auction (or, if that bidder is unable to consummate the transaction at that price, the Debtor may consummate the transaction with the next higher bidder, and so forth) without the need for an additional hearing or order of the Court.

(11) All bids for the purchase of the Debtor's assets shall be subject to approval of the Court.

(12) No bids shall be considered by the Debtor or the Bankruptcy Court unless a party submitted a Qualified Offer in accordance with the Bidding Procedures and participated in the Auction. The Debtor, in its absolute discretion, may reject any Qualified Offers not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules or the Local Bankruptcy Rules of the Court, or contrary to the best interests of the Debtor and parties of interest.

(13) All bids are irrevocable until the earlier to occur of: (i) the closing of the Sale Transaction, or (ii) fifteen (15) days following the last date of the Auction (as may be adjourned).

(14) All bids are subject to such other terms and conditions as are announced by the Debtor at the outset of the Auction.

**PLEASE TAKE FURTHER NOTICE** that a hearing to approve the sale to the Purchaser or Winning Bidder, as applicable, will be held by the Court on March 22, 2010 at 10:00 a.m., or as soon thereafter as counsel may be heard (the "**Sale Hearing**") at the United States Bankruptcy Court, One Bowling Green, Courtroom 623, New York, New York 10004.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion, the Order and the form of Asset Purchase Agreement can be obtained from the Bankruptcy Court docket for this case.

Dated: New York, New York
February __, 2010

        KLESTADT & WINTERS, LLP
        Arena Media Networks, LLC
        Debtor and Debtor in Possession

        By /s/ Ian R. Winters
        Ian R. Winters (IW-5102)
        Samir Gebrael (SG-8915)
        292 Madison Avenue, 17th Floor
        New York, New York 10017
        Telephone No. (212) 972-3000