UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | : | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| ARENA MEDIA NETWORKS, LLC, | : | Case No. 10-10667(BRL) |
| | : | |
| Debtor. | : | |
| | : | |

**ORDER (A) APPROVING THE SALE OF CERTAIN ASSETS OF THE DEBTOR FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES PURSUANT TO 11 U.S.C. § 363, (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND REJECTION OF ALL NON-ASSUMED AND ASSIGNED UNEXPIRED LEASES AND EXECUTORY CONTRACTS, AND (C) GRANTING RELATED RELIEF PURSUANT TO BANKRUPTCY CODE § 105 AND GRANTING RELATED RELIEF**

Upon consideration of the motion dated February 8, 2010 (the "Sale Motion"), of Arena Media Networks, LLC (the "Debtor"), as debtor-in-possession, for an order (the "Order"), *inter alia,* pursuant to Sections 105, 363 and 365 of the United States Bankruptcy Code (the "Bankruptcy Code") and Bankruptcy Rules 6004, 6006, 7001 *et seq*. and 9014 authorizing and approving (a) the sale of certain assets relating to the Debtor's business (the "Assets") described in and pursuant to the terms and conditions of an executed Asset Purchase Agreement, dated as of February 8, 2010 (the "Asset Purchase Agreement"), by and between the Debtor, as seller, and Access 360 Media, LLC, as buyer (the "Purchaser"), and (b) the assumption and assignment of various contracts identified in the Asset Purchase Agreement (the "Designated Contracts") and rejection of all other contracts and leases not expressly assumed and assigned hereunder; and a hearing on the Sale Motion having been held on March 22, 2010 (the "Sale Hearing"); and the Court having jurisdiction to consider and determine the Sale Motion in accordance with 28 U.S.C. § 157 and 1334; and due notice of the Sale Motion having been provided, and it appearing that no other or further notice need be provided; and after due deliberation and sufficient cause appearing therefor; the Court hereby finds and determines the following:

## General

A. The Court has jurisdiction to consider the Sale Motion and the relief requested therein under 28 U.S.C. §§ 157 and 1334. The Sale Motion is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (N) and (O). Venue is proper in the Court under 28 U.S.C. §§ 1408 and 1409.

B. The statutory predicates for the relief sought in the Sale Motion are sections 105(a), 363(b), (f), and (m), and 365(a), (b) and (1), of the Bankruptcy Code and Bankruptcy Rules 6004, 6006, 7001 *et seq.*, and 9014.

C. On February 18, 2010, the Court entered the Order Establishing Bidding Procedures and Related Relief Regarding Certain of the Debtor's Assets (the "<u>Bidding Procedures Order</u>") establishing (a) Bid Procedures (as defined in the Sales Motion), including manner and form of notice to be applied during a sale of certain assets of the Debtor and assumption and assignment of related executory contracts, (b) date for auction ("<u>Auction</u>"), (c) date for hearing to consider approval of the Auction results (the "<u>Sale Hearing</u>").

D. As evidenced by the affidavits and certificates of service filed with the Court, and based on the representations of counsel at the hearing, (i) proper, timely, adequate, and sufficient notice of the Sale Motion, the transactions contemplated therein (including the assumption and assignment of the Assumed Contracts (as defined below) and rejection of all other unexpired leases and executory contracts not expressly assumed and assigned hereunder), the Sale Procedures Order, the Bidding Procedures, the Auction and the Sale Hearing has been provided in accordance with Sections 102, 105, 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 7001 *et seq.* and 9014; (ii) such notice was good and sufficient and appropriate under the particular circumstances; and (iii) no other or further notice of the Sale Motion, the transactions contemplated therein (including the assumption and assignment of the

Assumed Contracts and rejection of all unexpired leases and executory contracts not expressly assumed and assigned hereunder), the Sale Procedures Order, the Bidding Procedures, the Auction, the Sale Hearing and the entry of this Order is required.

E. A reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein has been afforded to all interested persons and entities, including, but not limited to (i) The Office of the United States Trustee; (ii) the attorneys for the Purchaser; (iii) all non-Debtor counterparties to executory contracts and unexpired leases; (iv) all parties previously contacted in connection with the Debtor's marketing and sale efforts; (v) all known persons holding a lien on any of the Assets; (vi) all taxing authorities that have jurisdiction over the Assets; (vii) all of the Debtor's creditors; and (viii) all entities who have filed a notice of appearance and request for service of papers in the Debtor's bankruptcy case pursuant to Bankruptcy Rule 2002. The Debtor has filed with the Court affidavits and certificates of service of the Sale Motion, the Bidding Procedures Order, the Cure Notices[1], and related documents, detailing the manner of service thereof, and the persons served with, the Sale Motion, the Bidding Procedures Order, the Cure Notices and related documents.

## The Bankruptcy Case

F. On February 8, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court. The Debtor continues to operate its business and manage its properties and assets as a debtor in possession under Bankruptcy Code Sections 1107(a) and 1108.

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Sale Motion.

## The Sale Process for the Assets

G. Prior to the Petition Date, the Debtor worked to diligently examine and evaluate the assets, properties and rights held by the Debtor's estate.

H. In or about December, 2008, the Debtor entered into a brokerage agreement with Petsky Prunier ("Petsky"), an investment banking firm that specializes in marketing, information and digital media companies. Petsky served as Debtor's exclusive broker with the objective of finding a buyer and/or investor for Arena.

I. From December 2008 through February 2009, Petsky reached out to approximately one hundred and five (105) potential investors or buyers – ranging from financial institutions to venture funds. As a result of those efforts, approximately twenty-five (25) parties requested additional information but only four requested a management presentation.

J. Independent of Petsky's efforts, Debtor's management began searching for an investor or buyer starting in July 2009. After speaking with approximately twenty-five to thirty (25-30) potential purchasers (separate from the parties identified by Petsky), Debtor's management was able to identify four additional potential purchasers. These four interested parties did extensive due diligence on Debtor from August 2009 to January 2010. Of the four interested parties that reviewed the company's due diligence information, only Purchaser made an offer.

K. On February 8, 2010, Debtor and Purchaser entered into the Asset Purchase Agreement, whereby the Purchaser would acquire certain of the Debtor's assets for the Purchase Price, comprised of the following: An amount equal to the sum of the outstanding principal amount of the DIP Financing on the date of the Closing, not to exceed $800,000, plus the Purchaser/Lender's interest, fees and expenses, an amount representing the Designated Cure Costs (as defined in the Asset Purchase Agreement), expected to be between $3.6 and $5.2

million in the aggregate, plus $100,000 for distribution to remaining creditors and a maximum of $50,000 (plus access to Purchaser's back office resources and administrative services) to wind up the estate.

L.  The Debtor provided all notices as required under the Bidding Procedures Order.

M.  No Qualified Offer (as defined by the Bidding Procedures Order) was received by the Debtor, and therefore no Auction was held. The Purchaser has therefore submitted the highest and best offer for the Assets on terms and conditions set forth in the Asset Purchase Agreement.

N.  The Bidding Procedures afforded a full, fair and reasonable opportunity for any entity to make a higher or better offer to purchase the Assets and no higher or better offer has been made than that of the Purchaser.

O.  The Debtor and the Purchaser have complied with the Bidding Procedures Order in all respects.

### The Sale of the Assets to the Purchaser

P.  The transactions effectuating, and the terms and conditions governing, the sale of the Assets to the Purchaser are embodied in the Asset Purchase Agreement, which is attached hereto as Exhibit A. A description of the Assets is contained in Section 2.1 of the Asset Purchase Agreement. Moreover, a list of the Assumed Contracts (which represents the executory contracts that the Purchaser is assuming subject to a Closing as provided below and in the Asset Purchase Agreement) and the terms of this Order is contained in Exhibit B hereto (collectively, the "Assumed Contracts"), for assumption and further assignment to the Purchaser under the terms of the Asset Purchase Agreement and this Order.

Q.  The Asset Purchase Agreement contemplates that the sale of the Assets shall be free and clear of all liens, claims, interests, and other encumbrances within the meaning of

Section 363(f) of the Bankruptcy Code, including, but not limited to any and all liens, mortgages, security interests, conditional sale or title retention agreements, pledges, judgments, demands, encumbrances, easements, restrictions or charges of any and all kinds or nature and any and all claims (as defined in Section 101 (5) of the Bankruptcy Code), obligations, demands, options, rights, restrictions, and interests, whether imposed by agreement, understanding, law, equity, or otherwise (collectively, "<u>Liens</u>"), except as expressly permitted by the Asset Purchase Agreement.

R. The Purchaser's obligation to consummate the transactions contemplated in the Asset Purchase Agreement is subject to the specific conditions outlined in that contract, including the condition of Court approval. As of the date of entry of this Order, there has been no failure of any condition under the Asset Purchase Agreement to the Purchaser's obligation to consummate the Sale, and the Purchaser has agreed to the terms of this Order.

S. The Asset Purchase Agreement was negotiated, proposed, and entered into by and between the Purchaser and the Debtor without collusion, in good faith, and from arm's length bargaining positions. Neither the Debtor nor the Purchaser has engaged in any conduct that would cause or permit the application of Bankruptcy Code Section 363(n) to the sale, including having the Asset Purchase Agreement voided.

T. The Purchaser is a good faith purchaser in accordance with Section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby. Absent a stay of the effectiveness of this Order, if any, the Purchaser will be acting in good faith within the meaning of Bankruptcy Code Section 363(m) in closing the transaction under the Asset Purchase Agreement, including the assumption and assignment of the Assumed Contracts, at any

time after the expiration of any stay of this Order, whether pursuant to Bankruptcy Rule 6004(g) or otherwise.

U. The Assumed Contracts to be assumed and assigned to the Purchaser are valid and binding, in full force and effect, and enforceable in accordance with their terms, and are property of the Debtor's estate pursuant to Section 541(a) of the Bankruptcy Code.

V. The terms and conditions of the Asset Purchase Agreement and the Closing Deliveries to be made by the Purchaser under the Asset Purchase Agreement (i) are fair and reasonable; (ii) valid, binding and enforceable; (iii) constitute the highest and best offer for the Assets; (iv) will provide a greater recovery for the Debtor's creditors than would be provided by any other practical available alternative; and (v) constitute reasonably equivalent value and fair consideration for the Assets.

W. The transactions contemplated by the Asset Purchase Agreement will, upon consummation thereof (the "Closing"), (i) be a legal, valid, and effective transfer of the Assets to the Purchaser with no further action required on the part of the Debtor or the Seller (as defined in the Asset Purchase Agreement) or their respective affiliates and (ii) vest the Purchaser with good title to the Assets free and clear of all Liens, except as expressly permitted by the Asset Purchase Agreement, within the meaning of Section 363(f)(1) of the Bankruptcy Code.

X. The Purchaser would not have entered into the Asset Purchase Agreement and will not consummate the transactions described in the Asset Purchase Agreement (thus adversely affecting the bankruptcy estate and its creditors) if the sale of the Assets and the assignment of the Assumed Contracts were not free and clear of all Liens, except as expressly permitted by the Asset Purchase Agreement.

Y. The relief sought in the Sale Motion, including approval of the Asset Purchase Agreement and consummation of the transactions contemplated thereof is in the best interests of the Debtor, its bankruptcy estate, creditors, and all parties in interest. The Sale must be approved and consummated promptly in order to preserve the viability of the Debtor's business as a going concern and to maximize the value of the Debtor' estate.

Z. Upon entry of this Order, the Debtor has all the corporate or organizational power and authority necessary to consummate the transactions contemplated by the Asset Purchase Agreement.

AA. Except as otherwise provided in this Order, no consents or approvals, other than this Order and those expressly provided for in the Asset Purchase Agreement, are required for the Debtor to consummate the transactions contemplated by the Asset Purchase Agreement.

BB. The Debtor has demonstrated good, sound and sufficient business purpose and justification, and it is a reasonable exercise of its business judgment, to (i) sell the Assets on the terms and conditions set forth in the Asset Purchase Agreement; (ii) assume and assign the Assumed Contracts to the Purchaser and reject all other unexpired leases and executory contracts not expressly assumed and assigned hereunder; and (iii) consummate all transactions contemplated by the Asset Purchase Agreement, and the sale, assumption and assignment of the Assets is in the best interests of the Debtor, its estate and its creditors.

CC. The provisions of Sections 363 and 365 of the Bankruptcy Code have been complied with and are applicable to the sale of the Assets.

DD. The Debtor may consummate the transactions and transfer the Assets free and clear of all Liens of any kind or nature whatsoever, except as expressly permitted by the Asset Purchase Agreement, because one or more of the standards set forth in Section 363(f)(1)-(5) of

the Bankruptcy Code has been satisfied.  All parties with Liens of any kind or nature whatsoever in the Assets, except as expressly permitted by the Asset Purchase Agreement, who did not object to the Sale Motion and the relief requested therein, or who withdrew their objections to the transactions, are deemed to have consented pursuant to Sections 363(f)(2) and 365 of the Bankruptcy Code.  All parties with Liens of any kind or nature whatsoever in the Assets, except as expressly permitted by the Asset Purchase Agreement, who did object to the Sale Motion and the relief requested therein fall within one or more of the other subsections of Sections 363(f) and 365 of the Bankruptcy Code and are adequately protected by having their Liens attach to the net proceeds of the transactions with the same validity, enforceability, priority, force and effect that they now have as against the Assets, subject to the rights, claims, defenses, and objections, if any, of the Debtor and all parties in interest with respect to such Liens.

EE.     Except as otherwise provided in the Asset Purchase Agreement and this Order, consummation of the transactions will not subject the Purchaser to any debts, liabilities, obligations, commitments, responsibilities or claims of any kind or nature whatsoever, whether known or unknown, contingent or otherwise, existing as of the date hereof or hereafter arising, of or against the Debtor, any affiliate of the Debtor, or any other person by reason of such transfers and assignments, including, without limitation, based on any theory of antitrust or successor or transferee liability. Should the Purchaser be subjected to any claim contrary to the provisions of this paragraph, and whether or not this Court shall retain jurisdiction as such time as to the enforcement hereof, this provision may be enforced by the Purchaser in any court having jurisdiction of the subject matter as to which this provision is relevant.

FF.     The Purchaser has agreed to pay the Cure Amounts (as defined and set forth below) and has (i) cured, or has provided adequate assurance of cure, of all defaults under the

Assumed Contracts, if any, existing before the date of this Order, within the meaning of Section 365(b)(1)(A) of the Bankruptcy Code and (ii) provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default before the date of this Order under the Assumed Contracts, if any, within the meaning of Section 365(b)(1)(B) of the Bankruptcy Code, and the Purchaser has provided adequate assurance of its future performance of and under the Assumed Contracts, within the meaning of Section 365(b)(1)(C) of the Bankruptcy Code.

**ACCORDINGLY, THE COURT HEREBY ORDERS THAT:**

**General Provisions**

1.  The findings of fact entered above and the conclusions of law stated herein shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any finding of fact shall later be determined to be a conclusion of law, it shall be so deemed, and to the extent that any conclusion of law shall later be determined to be a finding of fact, it shall be so deemed.

2.  The Sale Motion is granted in its entirety on the terms and conditions set forth herein.

3.  All parties in interest have had the opportunity to object to the relief requested in the Sale Motion and to the extent that objections to the Sale Motion or the relief requested therein have not been withdrawn, waived or settled, such objections and all reservations of right included therein, are overruled on the merits. The parties who did not object, or who withdrew their objections, to the Sale Motion, are deemed to have consented pursuant to Section 363(f)(2) of the Bankruptcy Code. This Order incorporates the terms and provisions upon which certain objections were resolved, and accordingly, all authorizations and approvals provided for herein

of the Asset Purchase Agreement, or any provisions thereof, shall, without the necessity of repeating such limitation, be subject to the terms of this Order.

**Approval of the Purchase Agreement**

4. Except as provided for in, and subject to the terms of, this Order, the Asset Purchase Agreement and all of the terms and conditions contained therein are approved in their entirety and are binding upon the parties thereto. Upon entry of, and subject to the terms of, this Order, the Asset Purchase Agreement, to the extent (if any) not already enforceable by its terms, shall be fully enforceable by the parties thereto in accordance with and subject to its terms and conditions.

5. Subject to the terms of this Order, the sale of the Assets and the terms and conditions contemplated by the Asset Purchase Agreement, including, without limitation, the closing of the transactions contemplated by the Asset Purchase Agreement, are hereby approved pursuant to Sections 105(a), 363(b) and (f) of the Bankruptcy Code.

6. Subject to the terms of this Order, the Debtor and Purchaser are authorized and directed, pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code, to perform all of their obligations pursuant to the Asset Purchase Agreement and to execute such other documents and take such other actions as are reasonably necessary to effectuate the transactions contemplated by the Asset Purchase Agreement.

7. The sale of the Assets will vest the Purchaser with good title to the Assets and will be a legal, valid and effective transfer of the Assets free and clear of all Liens, except as expressly permitted by the Asset Purchase Agreement or provided by this Order.

**Transfer of the Assets to the Purchaser**

8. Except as expressly provided in the Asset Purchase Agreement and this Order, pursuant to Sections 105(a), 363(1), and 365 of the Bankruptcy Code, upon the Closing, the

Assets shall be sold, transferred or otherwise conveyed to Purchaser free and clear of all Liens, with all such Liens to attach to the proceeds of sale of the Assets in the order of their priority, and with the same validity, priority, force and effect which they now have as against the Assets, subject to the rights, claims, defenses, and objections, if any, of the Debtor and all parties in interest with respect to such Liens. Notwithstanding the foregoing and anything in the Asset Purchase Agreement to the contrary, the asset identified in the Debtor's Schedule of Assets and Liabilities (the "Schedules") as "Taxes paid on behalf of AMN Mgmt Holdings LLC" in the amount of $60,415 (the "Affiliate Receivable") shall be an Excluded Asset under the Asset Purchase Agreement and shall not be an Acquired Asset sold to the Purchaser by the Debtor.

9. Notwithstanding anything in the Asset Purchase Agreement to the contrary, the asset identified in the Debtor's Schedules as "Advance to Art Williams" in the amount of $87,500 (the "Williams Receivable") shall be an Acquired Asset as defined by the Asset Purchase Agreement. As additional consideration for the inclusion of the Williams Receivable as an Acquired Asset, the Purchase Price (as defined in the Asset Purchase Agreement) shall be increased by the sum of $10,000, and further, Mr. Williams agrees not to assert any claim against the Debtor's estate, except for any claims that may arise from the Debtor's estate's efforts to collect the Affiliate Receivable from him. .

10. Except with respect to its obligations as provided for in the Asset Purchase Agreement and this Order, all persons or entities holding Liens in, to or against the Assets shall be, and they hereby are, forever barred, estopped, and enjoined from asserting such Liens against Purchaser, its successors and assigns or such Assets.

### Assumption and Assignment of the Assumed Contracts and Rejection of Other Executory Contracts and Unexpired Leases

11. Subject to and conditioned on the Closing of the transactions contemplated in the Asset Purchase Agreement, the Debtor is authorized pursuant to Section 365(a) of the Bankruptcy Code to assume and assign the Assumed Contracts identified on <u>Exhibit B</u> hereto (which shall hereinafter, and for the purposes of this Order, constitute the "<u>Assumed Contracts</u>"). Notwithstanding anything in this Order or in the Asset Purchase Agreement to the contrary, at any time prior to Closing, the Purchaser may determine, in consultation with the Debtor, that it will not seek assignment of one or more contracts identified on the list of Assumed Contracts, in which case, prior to the Closing, the Debtor shall file a "Notice of Additional Excluded Contracts" identifying any such contracts previously designated as an Assumed Contract (the "<u>Additional Excluded Contracts</u>") and such Additional Excluded Contracts and shall be deemed rejected in accordance therewith and pursuant to section 365(a) of the Bankruptcy Code.

12. Subject to the terms of this Order, conditioned on the Closing of the transactions contemplated in the Asset Purchase Agreement, pursuant to Bankruptcy Code Sections 105(a) and 365, the Debtor's assumption and assignment to the Purchaser, and the Purchaser's assumption on the terms contained in the Asset Purchase Agreement, of the Assumed Contracts is approved, and the requirements of Bankruptcy Code Section 365(b)(1) with respect thereto are deemed satisfied.

13. Subject to the terms of this Order, all Assumed Contracts are in full force and effect and have not been terminated by operation of law, their own terms or otherwise.

14. Upon Closing pursuant to the Asset Purchase Agreement and this Order, the Assumed Contracts shall be transferred to, and remain in full force and effect for the benefit of, the Purchaser and the non-Debtor parties to such Assumed Contracts in accordance with their

terms, notwithstanding any provision in the Assumed Contracts (including, without limitation, those described in Sections 365(b)(2) and (1) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to Section 365(k) of the Bankruptcy Code, the Debtor shall be relieved from any further obligation or liability for any breach of the Assumed Contracts occurring after such assumption and assignment.

15. All monetary defaults or other cure (within the meaning of Bankruptcy Code Section 365), if any, under the Assumed Contracts arising or accruing before the date of this Order (without giving effect to any acceleration clause or any default provisions of the kind specified in Bankruptcy Code Section 365(b)(2)) as agreed to by the Debtor and the non-Debtor parties thereto shall be the responsibility of the Purchaser, and shall be paid or satisfied by the Purchaser in accordance with section 365(b)(2) of the Bankruptcy Code.

16. The "Cure Amounts" shall be the amounts set forth in (i) the relevant Cure Notice, (ii) any stipulation or agreement in writing entered into between the Debtor and the non-Debtor party to an Assumed Contract or (iii) any prior Order of this Court, as applicable, and shall be controlling notwithstanding anything to the contrary in any Assumed Contract or other document, and the non-Debtor party to each Assumed Contract shall be forever barred from asserting any other claim relating to the respective Assumed Contract arising prior to the Closing against the Debtor or the Purchaser.

17. The failure of the Debtor or the Purchaser to enforce any term or condition of any Assumed Contract shall not constitute a waiver of such term or condition or of the Debtor's or the Purchaser's rights to enforce every term and condition of the Assumed Contracts. All Assumed Contracts are assumed in full except as otherwise agreed between the Debtor, the Purchaser, and the counterparty to such Assumed Contract.

18. Notwithstanding anything herein or in the Asset Purchase Agreement to the contrary, the Debtor, the Purchaser and the non-Debtor party to an Assumed Contract may, without the necessity of a further application to, order of this Court, or notice to any other person, agree in writing to modify any terms and conditions of an Assumed Contract, provided that such modifications do not create or give rise to any claims against the Debtors or their estates, and in which event such contract, as modified, shall be deemed to be the Assumed Contract for the purposes of this Order and the Asset Purchase Agreement.

19. All of the Debtor's executory contracts and unexpired leases that are not Assumed Contracts are hereby deemed rejected as of the Closing; except that the Debtor's non-residential real property lease with Brook L.L.C. shall not be deemed rejected as of the Closing.

20. The Washington Nationals Stadium, LLC (the "Nationals") filed a limited objection with respect to the proposed assumption and assignment of its contract with the Debtor set forth on Exhibit B hereto and the Cure Notice with respect to the same (the "Nationals Objection"). Notwithstanding anything set forth in this Order or in the Asset Purchase Agreement, such contract shall not be an Assumed Contract, and nothing in this order shall be a determination of the Nationals' Objection as concerns such contract, including without limitation with respect to the Cure Amount, unless and until an agreement in writing is reached between the parties, or, in the absence of such agreement, a further hearing has been held with respect to the Nationals' Objection and a Bankruptcy Court order has been entered authorizing the assumption and assignment of such contract. Notwithstanding anything to the contrary set forth in this Order and in the Asset Purchase Agreement, the agreement referred to in Schedule 2.1 (d), item 59 of the Asset Purchase Agreement as being the unsigned agreement with the Nationals dated January

1 2009, is neither a Designated Contract nor an Assumed Contract.

**Miscellaneous Provisions**

21. The consideration to be paid by the Purchaser for the Assets under the Asset Purchase Agreement is fair and reasonable and may not be avoided under Section 363(n) of the Bankruptcy Code.

22. This Order (a) is and shall be effective as a determination that, upon the Closing, except as expressly provided in the Asset Purchase Agreement, all Liens existing as to the Assets prior to the Closing have been unconditionally released, discharged and terminated in each case as to the Assets and (b) is and shall be binding upon and shall govern acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of fees, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities, who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments that reflect that the Purchaser is the assignee of the Assets free and clear of Liens. In addition, upon the Closing, each of the Debtor's creditors are authorized and directed to execute such documents and take all other actions to release its Liens in or on the Assets as may have been recorded or may otherwise exist.

23. Nothing in this Order shall be deemed to waive, release, extinguish, estop the Debtor or its estate from asserting or otherwise impair or diminish any right (including without limitation any right of recoupment), claim, cause of action, defense, offset or counterclaim in respect of an Excluded Asset (as defined in the Purchase Agreement).

24. Except as otherwise provided in the Asset Purchase Agreement and this Order, consummation of the transactions will not subject the Purchaser to any debts, liabilities, obligations, commitments, responsibilities or claims of any kind or nature whatsoever, whether known or unknown, contingent or otherwise, existing as of the date hereof, or hereafter arising, against the Debtor by reason of such transfers and assignments, including, without limitation, based on any theory of successor or transferee liability.

25. Except with respect to enforcing the terms of the Asset Purchase Agreement and/or this Order, absent a stay pending appeal, no person shall take any action to prevent, enjoin or otherwise interfere with consummation of the transactions contemplated in or by the Purchase Agreement or this Order.

26. The Asset Purchase Agreement and any related agreements, documents or other instruments may be modified, amended, or supplemented through a written document signed by the parties in accordance with the terms thereof without further order of the Court; provided, however, that any such modification, amendment or supplement is neither material nor changes the economic substance of the transactions contemplated hereby.

27. In the absence of a stay of the effectiveness of this Order, in the event that the Purchaser and the Debtor consummate the transactions contemplated by the Asset Purchase Agreement at any time after entry of this Order, then with respect to the transactions approved and authorized herein, the Purchaser, as a purchaser in good faith within the meaning of Section 363(m) of the Bankruptcy Code, shall be entitled to the protections of Section 363(m) of the Bankruptcy Code in the event this Order or any authorization contained herein is reversed or modified on appeal.

28. The provisions of this Order are self-executing and each and every federal, state, and local governmental agency or department is hereby authorized and directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement.

29. Until these cases are closed or dismissed, the Court shall retain exclusive jurisdiction (a) to enforce and implement the terms and provisions of the Asset Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and each of the agreements, documents and instruments executed therewith; (b) to compel transfer of the Assets to the Purchaser; (c) to compel the Debtor and Purchaser to perform all of their respective obligations under the Asset Purchase Agreement, including the payment of the Purchase Price and transfer of the Assets; (d) to resolve any disputes, controversies or claims arising out of or relating to the Asset Purchase Agreement, including without limitation the adjudication of any cure required under Assumed Contracts; and (e) to interpret, implement and enforce the provisions of this Order. Except as otherwise provided in the Asset Purchase Agreement and this Order, consummation of the transactions will not subject the Purchaser to any debts, liabilities, obligations, commitments, responsibilities or claims of any kind or nature whatsoever, whether known or unknown, contingent or otherwise, existing as of the date hereof or hereafter arising, of or against the Debtor, any affiliate of the Debtor, or any other person by reason of such transfers and assignments, including, without limitation, based on any theory of antitrust or successor or transferee liability. Should the Purchaser be subjected to any claim contrary to the provisions of this paragraph, and whether or not this Court shall retain jurisdiction as such time as to the enforcement hereof, this provision may be enforced by the Purchaser in any court having jurisdiction of the subject matter as to which this provision is relevant.

30. Nothing in this Order or the Asset Purchase Agreement releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of this Order.

31. The terms of this Order and the Asset Purchase Agreement shall be binding on and inure to the benefit of the Debtor, the Purchaser and the Debtor's creditors and all other parties in interest, and any successors of the Debtor, the Purchaser and the Debtor's creditors, including any trustee or examiner appointed in these cases or any subsequent or converted cases of the Debtor under chapter 7 or chapter 11 of the Bankruptcy Code.

32. The failure to include any particular provision of the Asset Purchase Agreement in this Order shall not diminish or impair the effectiveness of that provision, it being the intent of the Court and the parties that the Asset Purchase Agreement be authorized in its entirety.

33. Any conflict between the terms and provisions of this Order and the Asset Purchase Agreement shall be resolved in favor of this Order.

34. The Debtor is hereby authorized to perform each of its covenants and undertakings and to take such actions and expense such funds as may be necessary to effectuate the terms of this Order and as provided in the Asset Purchase Agreement prior to closing without further order of the Court.

35. As provided by Bankruptcy Rule 7062, this Order shall be effective and enforceable immediately. The provisions of Bankruptcy Rules 6004(g) and 6006(d) staying the effectiveness of this Order for 10 days are hereby waived, and this Order shall be effective, and the parties may consummate the transactions contemplated by the Asset Purchase Agreement immediately upon entry of this Order.

36. All parties hereto agree that the failure of a Closing to occur within fifteen (15) days of entry of this Order shall constitute an additional Event of Default under the DIP Loan and Security Agreement.

37. Notwithstanding any provision to the contrary in the DIP Loan and Security Agreement, the Interim Order or the Final Order, the Purchaser shall not be obligated to provide written notice of default if the Closing fails to occur within fifteen (15) days of entry of this Order. Unless such Event of Default shall be expressly waived, in writing, by the Purchaser, the Purchaser's obligations under the Final Order and the DIP Loan and Security Agreement shall immediately terminate without further notice and Purchaser shall be entitled to full enforcement of its rights as provided in the Final Order.

Dated:   New York, New York
         March 22, 2010

/s/Burton R. Lifland
United States Bankruptcy Judge