UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| ARENA MEDIA NETWORKS, LLC, | : | Case No.  10-10667(BRL) |
|  | : |  |
| Debtor. | : |  |
|  | : |  |

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING THE FIRST AMENDED CHAPTER 11 PLAN OF LIQUIDATION FOR ARENA MEDIA NETWORKS, LLC

Arena Media Networks, LLC, the debtor and debtor-in-possession (the "Debtor")

in the above-captioned case (the "Chapter 11 Case"), filed a voluntary petition for relief under

chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy

Code"), on February 8, 2010 (the "Petition Date") in the United States Bankruptcy Court for the

Southern District of New York (the "Bankruptcy Court" or the "Court"); and

On November 1, 2010, the Debtor filed its (i) First Amended Plan of Liquidation

of Arena Media Networks, LLC Under Chapter 11 Plan of the Bankruptcy Code [Docket No. 87]

(including all exhibits thereto and as amended, modified or supplemented from time to time, the

"Plan"),[1] and its (ii) First Amended Disclosure Statement Pursuant to Section 1125 of the

Bankruptcy Code for First Amended Plan of Liquidation of Arena Media Networks, LLC Under

Chapter 11 of the Bankruptcy Code [Docket No. 88] (including all exhibits thereto and as

amended, modified or supplemented from time to time, the "Disclosure Statement"); and

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan
or the Solicitation Order (as defined below), as appropriate.  The rules of construction set forth in Article I of the
Plan shall apply to this Order (the "Confirmation Order").  If there is any direct conflict between the terms of the
Plan and the terms of this Confirmation Order, the terms of this Confirmation Order shall control.

On November 9, 2010, the Court entered an order approving (i) the Disclosure

Statement, (ii) Form and Manner of Notices, (iii) Form of Ballots and (iv) Solicitation Materials

and Solicitation Procedures [Docket No. 89] (the "Solicitation Procedures Order"); and

Pursuant to the Solicitation Procedures Order, the Court (i) established December

10, 2010 at 4:00 p.m. (prevailing Eastern Time) as the deadline for submitting Ballots accepting

or rejecting the Plan (the "Voting Deadline") and for filing objections to Confirmation of the

Plan, and (ii) scheduled a hearing (the "Confirmation Hearing") commencing on December 16,

2010 at 10:00 a.m. (prevailing Eastern Time) to consider Confirmation of the Plan; and

On December 13, 2010, the Debtor filed the Certification of Ballots [Docket No.

97] regarding ballots cast accepting or rejecting the Plan;

**NOW, THEREFORE**, based upon the Court's review of the Plan, the Disclosure

Statement, and the Certification of Ballots previously filed with the Court, and upon (i) all of the

evidence proffered or adduced and the arguments of counsel made at the Confirmation Hearing

and (ii) the record of the Chapter 11 Case, and after due deliberation thereon, any discussions on

the record at the Confirmation Hearing, and good and sufficient cause appearing therefor, this

Court hereby makes and issues the following Findings of Fact, Conclusions of Law and Orders[2]:

---

[2] This Confirmation Order constitutes this Court's findings of fact and conclusions of law under Rule 52 of the
Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rules 7052 and 9014.  Findings of fact shall be
construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  See
Fed. R. Bankr. P. 7052.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A.       Venue; Core Proceeding; Exclusive Jurisdiction.  On the Petition Date, the

Debtor commenced the Chapter 11 Case by filing a voluntary petition for relief under chapter 11

of the Bankruptcy Code.  The Debtor was qualified, and remains qualified, to be a debtor under

section 109 of the Bankruptcy Code and a debtor-in-possession under sections 1107 and 1108 of

the Bankruptcy Code.  Venue of the Chapter 11 Case in this District and before the Court was

proper as of the Petition Date and continues to be proper as of the date hereof pursuant to 28

U.S.C. §§ 1408 and 1409.  Confirmation of the Plan is a core proceeding under 28 U.S.C.

§ 157(b)(2).  The Court has jurisdiction over the Chapter 11 Case pursuant to 28 U.S.C. §§ 157

and 1334, and has exclusive jurisdiction to determine whether the Plan complies with the

applicable provisions of the Bankruptcy Code and should be confirmed.

B.       Judicial Notice.  The Court takes judicial notice of the docket of the

Chapter 11 Case maintained by the Clerk of the Court, including, without limitation, all

pleadings and other documents filed, all orders entered, and all evidence and arguments made,

proffered or adduced at the hearings held before the Court during the Chapter 11 Case, including,

without limitation, the hearing to consider the adequacy of the Disclosure Statement and the

Confirmation Hearing.

C.       Burden Of Proof.  The Debtor, as proponent of the Plan, has the burden of

proving the elements of subsections 1129(a) and (b) of the Bankruptcy Code by a preponderance

of the evidence, and the Debtor has met that burden as further found and determined in this

Confirmation Order.

D.       Solicitation and Notice.  To obtain the requisite acceptance of the Plan, on

or before November 12, 2010, the Debtor completed solicitation of acceptances and rejections of

the Plan by distributing the Disclosure Statement and related materials as required by the

Solicitation Procedures Order. As evidenced by the Affidavit of Service filed with this Court on

November 12, 2010 [Docket No. 91] (the "Solicitation Package Affidavit of Service"), and as

required by the Solicitation Order, the Debtor transmitted to the Solicitation Package (as defined

in the Solicitation Procedures Order) to holders of Class 3 and Class 5 claims. Further, as also

evidenced by the Solicitation Package Affidavit of Service, and as required by the Solicitation

Procedures Order, the Debtor transmitted the Confirmation Hearing Notice (as defined in the

Solicitation Procedures Order) and the applicable Notification of Non-Voting Status to holders of

Class 1, Class 2, Class 4 and Class 6 Claims and Equity Interests, as applicable.

      E.      <u>Adequacy of Notice</u>. The Disclosure Statement, the Plan, the

Confirmation Hearing Notice and the Ballots or Notification of Non-Voting Status, as applicable,

were transmitted and served in compliance with the Solicitation Procedures Order and the

Bankruptcy Rules and such transmittal and service constituted adequate and sufficient notice for

the Confirmation Hearing. All parties in interest had the opportunity to appear and be heard at

the Confirmation Hearing and no other or further notice shall be required.

      F.      <u>Good Faith Solicitation, No Requirement for Resolicitation</u>. Votes for

acceptance and rejection of the Plan were solicited in good faith and in compliance with sections

1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Disclosure

Statement, the Solicitation Procedures Order, all other applicable provisions of the Bankruptcy

Code and all other applicable rules, laws and regulations. Based on the record in the Chapter 11

Case, the Debtor and each of its members, parents, affiliates, officers, directors, shareholders,

employees, attorneys, accountants, agents, advisors, successors and assigns, if any, in each case

solely in their capacity as such, have acted in "good faith" within the meaning of section 1125(e)

of the Bankruptcy Code and the Bankruptcy Rules in compliance with all of their respective

activities relating to the solicitation of acceptances of the Plan and their participation in the

activities described in section 1125 of the Bankruptcy Code, and accordingly, such parties are

entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the

exculpation and release provisions provided for in Article 11.3 of the Plan and this Confirmation

Order.  Based upon the Court's review of any amendments and modifications embodied in the

Plan, no further solicitation or resolicitation of any Holders of Claims or Interests is necessary.

G.    Certification of Ballots.  As evidenced by the Certification of Ballots,

pursuant to sections 1124 and 1126 of the Bankruptcy Code, each of the Impaired Classes

entitled to vote on the Plan – Class 3 BNYH Secured Claims and Class 5 General Unsecured

Claims – has voted to accept the Plan.

H.    Injunctions, Exculpations and Releases.  Pursuant to section 1123(b)(3) of

the Bankruptcy Code, the injunction, exculpation and release provisions provided for in Article

11.3 of the Plan and herein and implemented by this Confirmation Order are fair, equitable,

reasonable and in the best interests of the Debtor, the Estate and Holders of Claims and Interests.

The releases of non-Debtor Persons and Entities (including, without limitation, BNYH) under the

Plan is fair to Holders of Claims and Interests and are necessary to the proposed liquidation of

the Debtor. The record of the Confirmation Hearing and this Chapter 11 Case is sufficient to

support the injunction, exculpation and release provisions provided for in Article 11.3 of the Plan

and this Confirmation Order.

## Compliance with the Requirements of Section 1129 of the Bankruptcy Code

I.    Satisfaction of Confirmation Requirements.  The Plan satisfies the

requirements for Confirmation set forth in subsections 1129(a) and (b) of the Bankruptcy Code.

J.      Section 1129(a)(1) – Compliance of the Plan with Applicable Provisions

of the Bankruptcy Code.  The Plan complies with all applicable provisions of the Bankruptcy

Code as required by section 1129(a)(1) of the Bankruptcy Code, including, without limitation,

sections 1122 and 1123 thereof.

K.      Pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code,

Article III of the Plan designates six (6) Classes of Claims and Interests.  As required by section

1122(a) of the Bankruptcy Code, each Class of Claims and Interests contains only Claims or

Interests that are substantially similar to the other Claims or Interests within that Class.  Valid

business, factual and legal reasons exist for separately classifying the various Classes of Claims

and Interests created under the Plan, and the Plan's treatment thereof does not unfairly

discriminate between Holders of Claims or Interests.  Pursuant to section 1123(a)(1) of the

Bankruptcy Code, Administrative Claims, Priority Tax Claims and Fee Claims are not required

to be classified under the Plan and as such have not been classified.

L.      In compliance with section 1123(a)(2) of the Bankruptcy Code, Article IV

of the Plan specifies that Class 1 Priority Non-Tax Claims, Class 2 DIP Claims and Class 4 Other

Secured Claims are not impaired in that the legal, equitable or contractual rights of Holders of

Claims in these Classes are not altered under the Plan.

M.      In compliance with section 1123(a)(3) of the Bankruptcy Code, Article IV

of the Plan specifies the treatment of each Impaired Class of Claims and Interests under the Plan.

Class 3 BNYH Secured Claims, Class 5 General Unsecured Claims and Class 6 Interests are

designated as Impaired in that the legal, equitable or contractual rights of Holders of Claims or

Interests in these Classes are altered under the Plan.

N.     Article IV of the Plan provides for the same treatment by the Debtor of each Claim or Interest in a particular Class as required by section 1123(a)(4) of the Bankruptcy Code.

O.     In compliance with section 1123(a)(5) of the Bankruptcy Code, Article VI of the Plan sets forth the means for implementation of the Plan, which means are adequate and proper.  The Post-Confirmation Debtor will be able to make all of the payments under, and comply with all other provisions of, the Plan.  Additionally, Article VI and various other provisions of the Plan provide adequate and proper means for the Plan's implementation including, without limitation:  (i) the establishment of the Plan Fund; (ii) the designation of the disbursing agent; and (iii) the maintenance and establishment of the Reserves.

P.     Article VII of the Plan provides that on the Effective Date, (i) the Post-Confirmation Debtor shall be authorized and empowered to take any and all such actions and measures necessary to implement and administer the terms and conditions of the Plan without need for further action or approval of the Court,

Q.     The Plan identifies the Person proposed to serve as the Disbursing Agent. As required by section 1129(a)(5) of the Bankruptcy Code, in the Plan, discloses that the officers of the Debtor shall be the officers of the Post-Confirmation Debtor. As required by section 1123(a)(7) of the Bankruptcy Code and pursuant to the Plan, these Persons have been selected in a manner consistent with the interests of Holders of Claims and Interests and with public policy.

R.     Section 1123(b) of the Bankruptcy Code describes certain other permissible plan provisions, of which several are included in the Plan, including, without limitation, the following:  (a) Article IX of the Plan provides for the rejection of any and all executory contracts and unexpired leases that exist between the Debtor and any Person or Entity

(except for any executory contracts and unexpired leases that have been rejected, assumed or

assumed and assigned under section 365 of the Bankruptcy Code pursuant to an order of the

Bankruptcy Court entered prior to the Confirmation Date, or as to which a motion for the

approval of the rejection or assumption of such executory contracts and unexpired leases has

been filed on the docket of the Chapter 11 Case prior to the Effective Date and is pending

approval of the Court); and (b) Section 11.3(f) of the Plan provides that as of the Effective Date,

the Debtor, the Post-Confirmation Debtor and the Estate and any successors and assigns, and any

Person or Entity that claims or might claim through, on behalf of, or for the benefit of any of the

foregoing, shall, and shall be deemed to have, irrevocably and unconditionally, fully, finally and

forever waive, release, acquit and discharge each of the Creditor Released Parties, the Debtor

and the Debtor's officers, directors, financial advisors, accountants, attorneys, employees,

agents, successors and assigns and any other Person or Entity acting on the Debtor's behalf at

any time prior to the Effective Date, in each case solely in their capacity as such, from any and

all Causes of Action, including, without limitation, the Causes of Action, that arise out of or

relate in any way to the Chapter 11 Case, the Debtor, the Debtor's contracts and agreements with

any of the Creditor Released Parties, the Plan, the Disclosure Statement or any claim, act, fact,

transaction, occurrence, statement or omission occurring at any time up to and including the

Effective Date.  Such provisions, and all other provisions of the Plan, are consistent with the

Bankruptcy Code in accordance with section 1123(b)(6) of the Bankruptcy Code.

S.    The Plan is dated and identifies the entities submitting it, thereby

satisfying Bankruptcy Rule 3016(a).

T.    <u>Section 1129(a)(2) – Compliance by the Debtor with Applicable

Provisions of the Bankruptcy Code</u>.  The Debtor, as the proponent of the Plan, has complied with

all applicable provisions of the Bankruptcy Code, including, without limitation, sections 1125 and 1126 of the Bankruptcy Code and Bankruptcy Rules 3017 and 3018 regarding the Disclosure Statement and solicitation of the Plan.  The Disclosure Statement and the procedures by which the Ballots for acceptance or rejection of the Plan were solicited and tabulated were fair, properly conducted and in accordance with Bankruptcy Rules 3017 and 3018 and section 1126 of the Bankruptcy Code.  Accordingly, the requirements of section 1129(a)(2) of the Bankruptcy Code have been satisfied.

U.    Based on the record before the Court, the Debtor and each of its members, parents, affiliates, officers, directors, shareholders, employees, attorneys, accountants, agents, advisors, successors and assigns, if any, in each case solely in their capacity as such, have solicited, or if found to have solicited votes on the Plan, have done so, and have participated in the activities described in section 1125 of the Bankruptcy Code in good faith, within the meaning of section 1125(e) of the Bankruptcy Code, and in compliance with the applicable provisions of the Solicitation Order, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws and regulations, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and any exculpation and release provisions provided for in Article XI of the Plan and this Confirmation Order.

V.    <u>Section 1129(a)(3) – Proposal of the Plan in Good Faith</u>.  The Plan Proponents have proposed the Plan in good faith and not by any means forbidden by law.  The Plan is designed for the Assets to be liquidated and for the Proceeds to be distributed to Holders of Allowed Claims in accordance with the terms of the Plan and the priority of claims provisions of the Bankruptcy Code.  Moreover, the Plan itself, the process leading to its formation, and the support for the Plan received from the accepting voting Classes provides independent evidence

of the Debtor's good faith.  The Debtor and each of its members, parents, affiliates, officers,

directors, shareholders, employees, attorneys, accountants, agents, advisors, successors and

assigns, if any, in each case solely in their capacity as such, have acted in "good faith" within the

meaning of section 1125(e) of the Bankruptcy Code.  Accordingly, the Plan satisfies the "good

faith" requirement of Section 1129(a)(3).

      W.    <u>Section 1129(a)(4) – Bankruptcy Court Approval of Certain Payments as
Reasonable</u>.  Pursuant to section 1129(a)(4) of the Bankruptcy Code, any payment made or

promised by the Debtor or by any Person or Entity acquiring property under the Plan, for

services or for costs and expenses in, or in connection with, the Chapter 11 Case, or in

connection with the Plan and incident to the Chapter 11 Case, has been disclosed to this Court.

Any such payment made on a final basis before Confirmation of the Plan is reasonable.  Any

such payment to be fixed or approved on a final basis after Confirmation of the Plan is subject to

approval of this Court as reasonable.

      X.    <u>Section 1129(a)(5) – Disclosure of Information Regarding Directors,
Officers and Insiders</u>.  Pursuant to section 1129(a)(5) of the Bankruptcy Code, the identities and

affiliations of the Persons and Entities proposed to serve as the initial members of the post-

confirmation Debtor upon the Effective Date were disclosed in the Plan.  The appointment of

such Persons and is consistent with the best interests of the Holders of Claims and Interests and

with public policy.  The Plan disclosed the identity of any potential insiders, as that term is

defined in section 101(31) of the Bankruptcy Code, that will serve and their compensation.

Accordingly, the Plan satisfies the requirements of section 1129(a)(5) of the Bankruptcy Code.

      Y.    <u>Section 1129(a)(6) – Governmental Regulatory Control Over Rate
Changes</u>.  The Plan does not provide for or contemplate any rate change that would require the

approval of any regulatory agency.  Accordingly, section 1129(a)(6) of the Bankruptcy Code is

inapplicable.

> Z.    Section 1129(a)(7) – Best Interests of Holders of Claims and Interests.

With respect to each impaired Class of Claims or Interests, the Certification of Ballots and the

Liquidation Analysis (as defined in the Disclosure Statement) indicate that each Holder of a

Claim or Interest in an Impaired Class has accepted the Plan or will receive or retain under the

Plan on account of such Claim or Interest property of a value, as of the Effective Date, that is not

less than the amount that such Holder would so receive or retain if the Debtor was liquidated

under chapter 7 of the Bankruptcy Code on such date.  The Liquidation Analysis, including the

methodology used and estimations and assumptions made therein, (i) is persuasive and credible

as of the dates such evidence was prepared, presented or proffered, (ii) has not been controverted

by other persuasive evidence and has not been challenged, (iii) is based upon reasonable and

sound assumptions, and (iv) provides a reasonable estimate of the liquidation value of the Estate

upon a conversion to a chapter 7 proceeding.  Therefore, the Plan satisfies the requirements of

section 1129(a)(7) of the Bankruptcy Code

> AA.    Section 1129(a)(8) – Acceptance of the Plan.  Pursuant to sections 1126

and 1129(a)(8) of the Bankruptcy Code:  (i) Class 1 Priority Non-Tax Claims, Class 2 DIP

Claims and Class 4 Other Secured Claims are Unimpaired under the Plan and are deemed to have

accepted the Plan; and (ii) as evidenced by the Certification of Ballots, Class 3 BNYH Secured

Claims and Class 5 General Unsecured Claims voted to accept the Plan.  The provisions of the

Plan with respect to the Holders of the Unimpaired Claims in Classes 1, 2 and 4 under the Plan

are fair and appropriate.  Because the Plan provides that Holders of Class 6 Equity Interests will

not receive or retain any property under the Plan on account of such Interests, such Class is

deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

Nonetheless, the Plan is confirmable because the Plan satisfies section 1129(b)(1) of the

Bankruptcy Code with respect to such Class 6 Interests.

As set forth in the Voting Declaration, the percentages of Holders of Claims in Classes

entitled to vote on the Plan that voted to accept or reject the Plan are as follows:

| Class of Impaired Creditors | Amount Accepting Plan (% of Amount Voted) | Amount Rejecting Plan (% of Amount Voted) | Number Accepting Plan (% of Number Voted) | Number Rejecting Plan (% of Number Voted) |
|---|---|---|---|---|
| Class 3 BNYH Secured Claims | 100% | 0% | 100% | 0% |
| Class 5 General Unsecured Claims | 100% | 0% | 100% | 0% |

BB.    Section 1129(a)(9) – Treatment of Claims Entitled to Priority Pursuant to
Section 507(a) of the Bankruptcy Code.  The Plan provides for the treatment of Allowed Claims

entitled to priority pursuant to section 507(a)(2)-(8) of the Bankruptcy Code in a manner

consistent with section 1129(a)(9) of the Bankruptcy Code.

CC.    Section 1129(a)(10) – Acceptance by at Least One Impaired Class.  As

required by section 1129(a)(10) of the Bankruptcy Code, and as evidenced by the Certification of

Ballots, at least one Impaired Class of Claims entitled to vote on the Plan has accepted the Plan,

excluding the votes cast by any insiders, as that term is defined in section 101(31) of the

Bankruptcy Code.  Accordingly, section 1129(a)(10) of the Bankruptcy Code has been satisfied

in all respects.

DD.    Section 1129(a)(11) – Feasibility of the Plan.  As set forth in the

Disclosure Statement, the Debtor estimates that the Debtor will have sufficient Available Cash to

ensure that the Holders of Allowed Administrative Claims, Priority Tax Claims and Fee Claims

and Allowed Claims in Classes 1, 2, 3 and 5 receive the distributions required under the Plan.

Additionally, Article VIII of the Plan provides for the creation of certain reserves for the benefit

of any Holders of Disputed Claims.  Accordingly, Confirmation of the Plan is not likely to be

followed by the further liquidation of the Debtor, except as contemplated by the Plan.  The Plan,

therefore, complies with section 1129(a)(11) of the Bankruptcy Code.

      EE.    <u>Section 1129(a)(12) – Payment of Statutory Bankruptcy Fees</u>.  In

accordance with section 1129(a)(12) of the Bankruptcy Code, Section 13.6 of the Plan provides

that all fees due and payable pursuant to section 1930 of Title 28 of the United States Code prior

to the Effective Date shall be paid by the Debtor.

      FF.    <u>Section 1129(b) – Confirmation of the Plan Over Non-Acceptance of
Class 6 Equity Interests Deemed to Reject Plan</u>.  The votes of Holders of Equity Interests in

Class 6 were not solicited because the Plan provides that Holders of Class 6 Equity Interests will

not receive or retain under the Plan any property on account of such Interests, and such Class is

therefore deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

Notwithstanding non-compliance with section 1129(a)(8) of the Bankruptcy Code as to Class 6

Equity Interests, the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy

Code because all Classes senior to Class 6 Interests have either accepted the Plan or are

Unimpaired and no Holder of any Interest that is junior to Class 6 Interests will receive or retain

under the Plan on account of such junior Interest any property.

      GG.    <u>Section 1129(d) – Principal Purpose of Plan</u>.  The principal purpose of the

Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the

Securities Act of 1933, and no governmental entity has filed any objection asserting any such

avoidance.

## No Impairment, Compliance with Applicable Law, Miscellaneous

HH.    Satisfaction of Conditions Precedent.  Each of the conditions precedent to

the confirmation, as set forth in Section 10.1 of the Plan.

II.    Compliance with Bankruptcy Code.  No provisions of the Plan or this

Confirmation Order, or the implementation of the terms under each of the Plan and this

Confirmation Order, violate the terms of any provision of the Bankruptcy Code.

JJ.    Retention of Jurisdiction.  Pursuant to sections 105(a) and 1142 of the

Bankruptcy Code, and notwithstanding the entry of this Confirmation Order or the occurrence of

the Effective Date, this Court, except as otherwise provided in the Plan or herein, shall retain

exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Case and the

Plan to the fullest extent permitted by applicable law, including, but not limited to, the matters

set forth in Article XII of the Plan.

## ORDERS

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED,
DECREED AND DETERMINED THAT**:

1.    Disclosure Statement and Solicitation of Plan.  The Disclosure Statement

contains adequate information in accordance with sections 1125 and 1126 of the Bankruptcy

Code and the solicitation of the Plan is hereby approved in all respects.

2.    Confirmation of the Plan.  The Plan, a copy of which is annexed hereto as

Exhibit A, is approved and confirmed under section 1129 of the Bankruptcy Code.  The terms of

each of the documents in the Plan (subject to any further alterations or amendments by the

Debtor in accordance with Section 13.7 of the Plan or as otherwise approved by this Court) are approved and constitute an integral part of the Plan.

3.      Objections Withdrawn or Overruled.  Any objections and responses to the Plan not heretofore withdrawn are overruled in their entirety and deemed withdrawn with prejudice.

4.      Provisions of Plan and Confirmation Order Non-Severable and Mutually Dependent.  The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are non-severable and mutually dependent.

5.      Plan Classification Controlling.  The classification of Claims and Interests for purposes of distributions under the Plan shall be governed solely by the terms of the Plan, and the classification of Claims and Interests therein.

6.      Record Closed.  The record of the Confirmation Hearing is hereby closed.

7.      Notice.  As established by the Solicitation Package Affidavit of Service, and as set forth herein, the Debtor provided good and sufficient notice of the Confirmation Hearing and the deadline for filing and serving objections to the Plan, which notice is hereby approved.

8.      Bar Date for Administrative Claims.  Unless otherwise ordered by the Bankruptcy Court, any and all requests for payment of Administrative Claims (except for Fee Claims) for the period from the Petition Date through and including the Effective Date must be filed and served on counsel to the Debtor no later than thirty (30) days after the Effective Date (the "Administrative Claim Bar Date").  Any Person or Entity that is required to file and serve a request for payment of an Administrative Claim and fails to timely file and serve such request on or before the Administrative Claim Bar Date shall be forever barred, estopped and enjoined from

asserting such Administrative Claim or participating in distributions under the Plan on account

thereof.  Any and all objections to requests for payment of Administrative Claims (except for Fee

Claims) must be filed and served on counsel to the Debtor and the requesting party within forty-

five (45) days after the Administrative Claim Bar Date, unless extended by the Bankruptcy Court

or upon agreement of the objecting party and the requesting party.  For the avoidance of doubt,

the establishment of the Administrative Claim Bar Date in the Plan and this Confirmation Order

is not intended to and shall not serve as an extension of the deadline established by this Court in

(a) the Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and

Manner of Notice Thereof [Docket No. 44] or (b) the Order Establishing Deadline for Filing

Proofs of Claim Related to Rejection Damages Claims and Approving the Form and Manner of

Notice Thereof [Docket No. 63].

9.    Bar Date for Fee Claims.  Unless otherwise ordered by the Bankruptcy

Court, any and all requests for payment of pre-Confirmation Date professional fees and expenses

(a "Fee Claim") incurred through the Confirmation Date must be filed and served on counsel to

the Debtor, counsel to the Debtor and the U.S. Trustee no later than thirty (30) days after the

Effective Date (the "Fee Claim Bar Date").  Any Person or Entity that is required to file and

serve a request for payment of a Fee Claim and fails to timely file and serve such request on or

before the Fee Claim Bar Date shall be forever barred, estopped and enjoined from asserting

such Fee Claim or participating in distributions under the Plan on account thereof.  Any and all

objections to Fee Claims must be filed and served on counsel to the Debtor and the U.S. Trustee

and the requesting party within twenty (20) days after the filing of such Fee Claim, unless

extended by the Bankruptcy Court or upon agreement of the objecting party and the requesting

party.

10.     <u>Disposition of Remaining Assets</u>.  After the Effective Date, in all
instances consistent with and subject to the terms and conditions of the Plan, the Debtor shall
consummate any necessary transactions regarding the liquidation, sale, transfer or other
disposition of the Remaining Assets, if any.  With respect to the liquidation, sale, transfer or
other disposition of any Remaining Assets, this Confirmation Order shall serve as an order
granting the waiver of any and all stamp and transfer taxes and any and all other similar taxes
and fees pursuant to section 1146(a) of the Bankruptcy Code, if applicable.  Any Proceeds from
the liquidation, sale, transfer or other disposition of any Remaining Assets, including, without
limitation, the Debtor Causes of Action (to the extent not waived or otherwise released pursuant
to the Plan), shall be distributed to Holders of Allowed Claims in accordance with the terms and
conditions of the Plan and the applicable priorities of the Bankruptcy Code.

11.     <u>Distribution Procedures</u>.  The provisions in Article VI of the Plan
governing distributions under the Plan are hereby approved in all respects and found to be fair
and reasonable.

12.     <u>No Postpetition Interest on Claims</u>.  Unless otherwise specifically
provided for in the Plan, this Confirmation Order or other Final Order of the Bankruptcy Court,
or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any
Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition
Date on any such Claim.

13.     <u>Setoffs</u>.  Except as otherwise provided in the Plan or this Confirmation
Order, the Debtor, the Post-Confirmation Debtor and the Plan Administrator may, to the extent
permitted under applicable law, setoff against any Allowed Claim and the distributions to be
made pursuant to the Plan on account of such Allowed Claim, any claims, rights and Causes of

17

Action of any nature that the Debtor may hold against the Holder of such Allowed Claim that are not otherwise waived, released or compromised in accordance with the Plan; provided, however, that prior to effectuating any such setoff, the Debtor, or the Post-Confirmation Debtor, as applicable, shall provide notice to the affected Holder; provided further, however, that neither such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor or the Post-Confirmation Debtor of any claims, rights and Causes of Action that the Debtor possesses against such Holder, including, without limitation, any Debtor Causes of Action.

14.     Disputed Claims.  The Debtor prior to the Effective Date and the Post-Confirmation Debtor on and after the Effective Date may seek to object to, or seek estimation under section 502 of the Bankruptcy Code of, any Proof of Claim filed in the Chapter 11 Case, subject to Article VIII of the Plan.

15.     Objections to Claims.  Except with respect to Administrative Claims and Fee Claims, the Post-Confirmation Debtor shall file objections to Claims with the Bankruptcy Court and serve such objection upon each affected Creditor no later than ninety (90) days after the Effective Date; provided, however, that such deadline may be extended by the Bankruptcy Court upon motion of the Post-Confirmation Debtor.

16.     Settlement of Disputed Claims and Causes of Action.  Objections to Claims may be litigated to judgment or withdrawn, and may be settled with the approval of the Bankruptcy Court. except to the extent that such approval is not necessary as provided in the Plan.  The provisions in Section 8.2 of the Plan governing the settlement of Disputed Claims and Causes of Action are hereby approved in all respects and found to be fair and reasonable.

17.    Plan Fund.  On or as soon as practicable after the Effective Date, the

Disbursing Agent shall establish and maintain the Plan Fund in all instances consistent with, and

subject to the terms and conditions of, the Plan and this Confirmation Order.

18.    Binding Effect of Plan.  The provisions of the Plan, and any contract,

instrument, release, or other agreement or document created or entered into in connection

therewith, and this Confirmation Order shall be binding upon the Debtor, the Post-Confirmation

Debtor, and any and all Persons or Entities which have held, hold, or may hold Claims or

Interests, whether or not the Claims and Interests of such Persons or Entities are Impaired under

the Plan and whether or not such Persons or Entities have accepted the Plan, and their respective

successors and assigns.

19.    **Injunction.  Except as otherwise provided in the Plan or an order of**

**the Bankruptcy Court, as of the Confirmation Date, except as provided in the Plan or this**

**Confirmation Order, all Persons who, directly or indirectly, have held, hold or may hold**

**Claims against the Debtor or Equity Interests in the Debtor, are permanently enjoined**

**from taking any of the following actions on account of any such Claims, debts, interests or**

**liabilities, other than actions brought to enforce any rights or obligations under the Plan:**

**(i) commencing or continuing in any manner any action or other proceeding against the**

**Debtor or its properties; (ii) enforcing, attaching, collecting or recovering in any manner**

**any judgment, award, decree or order against the Debtor or its properties; (iii) creating,**

**perfecting or enforcing any lien or encumbrance against the Debtor or its properties; (iv)**

**asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability**

**or obligation due to the Debtor or its Estate, and (v) commencing or continuing, in any**

**manner or any place, any action that does not comply with or is inconsistent with the**

provisions of the Plan or this Confirmation Order. The injunction provided for in Section 11.3(c) of the Plan shall extend to any successor and assigns of the Debtor, the Post-Confirmation Debtor and any of the Assets.

20.      **Exculpation.  The Debtor and the Creditors Committee, and their members and professionals (acting in such capacity) (each, an "Exculpated Party"), shall neither have nor incur any liability to any Person for any action taken or omitted to be taken after the Petition Date in connection with or related to the Chapter 11 Case, including, without limitation, the preparation and filing of the Chapter 11 Case, or the formulation, preparation, dissemination, implementation, Confirmation or consummation of the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan or any act taken or omitted to be taken in connection with, in contemplation of, during or in any way related to the Chapter 11 Case, except for acts or omissions as a result of willful misconduct or gross negligence, provided, however, that nothing herein shall affect or modify any obligations created under the Plan, or the rights of any Holder of an Allowed Claim to enforce its rights under the Plan and shall not release any action or inaction constituting willful misconduct or gross negligence, in each case subject to the determination of such by final order of a court of competent jurisdiction; provided that any Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities, if any, under the Plan and such reasonable reliance shall form an absolute defense to any such claim, Cause of Action or liability. Without limiting the generality of the foregoing, each Exculpated Party shall be entitled to and granted the benefits and protections of section 1125(e) of the Bankruptcy Code.**

21.    **Releases by Debtor and Estate.  As of the Effective Date, the Debtor and the Estate and any successors and assigns, and any Person that claims or might claim through, on behalf of, or for the benefit of any of the foregoing, shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged each of the Creditor Released Parties, the Debtor and the Debtor's officers, directors, financial advisors, accountants, attorneys, employees, agents, successors and assigns and any other Person acting on the Debtor's behalf at any time prior to the Effective Date, in each case solely in their capacity as such, from any and all Causes of Action that arise out of or relate in any way to the Chapter 11 Case, the Debtor, the Plan, the Disclosure Statement or the BNYH Loan Agreement, or any claim, act, fact, transaction, occurrence, statement or omission occurring at any time up to and including the Effective Date; provided, however, that solely with respect to Causes of Action that are unknown as of the Petition Date, nothing herein shall be construed to release any Person from liability for willful misconduct or gross negligence as determined by a Final Order.**

22.    **Releases by Holders of Claims and Interests.  Each Person that receives any payment under the Plan and does not elect to opt-out of the releases set forth in Section 11.3(f) of the Plan on such Person's ballot shall, solely in its capacity as a Claimant, for itself and its respective shareholders, officers, directors, managers, employees, members, agents, advisors, accountants, attorneys, representatives, successors, heirs, executors, administrators and assigns, in each case solely in their capacity as such, be deemed to have released the Creditor Released Parties from any and all claims, Causes of Action, acts, facts, transactions, occurrences, statements or omissions that arise out of or relate in any way to Arena Media Networks, LLC, the Chapter 11 Case, the Debtor, the**

21

Plan, the Disclosure Statement or the BNYH Loan Agreement occurring at any time up to and including the Effective Date that such Person would have been legally entitled to assert; and be deemed to have released the Debtor, and the Debtor's officers, directors, members, financial advisors, accountants, attorneys, employees, agents, successors and assigns and any other Person or Entity acting on the Debtor's behalf in each case solely in their capacity as such, Parties from any and all claims, Causes of Action, acts, facts, transactions, occurrences, statements or omissions that arise out of or relate in any way to Arena Media Networks, LLC, the Chapter 11 Case, the Debtor, the Plan, the Disclosure Statement arising on or after the Petition Date, except for acts or failures to act that constitute willful misconduct or gross negligence, **provided**, **however**, that solely with respect to any Causes of Action that are unknown as of the Petition Date, nothing in this Section 11.3(f) of the Plan shall be construed to release any Person from liability for willful misconduct or gross negligence as determined by a Final Order.

23.    Each Person or Entity to which Section 11.3(f) of the Plan applies shall be deemed to have granted the releases set forth in Section 11.3(f) of the Plan notwithstanding that such Person or Entity may hereafter discover facts in addition to, or different from, those which such Person or Entity now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts, and such Person or Entity expressly waives any and all rights that such Person or Entity may have under any statute or common law principle, including, without limitation, section 1542 of the California Civil Code, to the extent such section is applicable, which would limit the effect of such releases to those claims or Causes of Action actually known or suspected to exist at the time of Confirmation.  Section 1542 of the California Civil Code

**generally provides as follows: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."**

24.    **If a holder of an Allowed Claim casts a ballot and elects to opt-out of the releases set forth in section 11.3(f) of the Plan, such holder shall receive no distribution under the Plan, and such distribution shall instead be allocated to General Unsecured Creditors who have not opted out of such releases and shall be allocated and distributed to such creditors Pro Rata.**

25.    <u>Preservation of All Causes of Action Not Expressly Settled or Waived and Released</u>.  Unless a claim or Cause of Action against a Person or Entity is expressly waived, abandoned, relinquished, released, compromised, settled or treated otherwise in the Plan or any Final Order, including, without limitation, this Confirmation Order, the Debtor expressly reserves such claim or Debtor Cause of Action, whether existing as of the Petition Date or thereafter arising, including, but not limited to, any adversary proceeding filed in the Chapter 11 Case, and any and all claims and Causes of Action not specifically identified or of which the Debtor may presently be unaware of which arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time or facts or circumstances that may change or be different from those the Debtor now believes to exist, for later action by the Post-Confirmation Debtor and therefore, no preclusion doctrine, including, without limitation, the doctrine of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such claims or Debtor Causes of Action

upon or after Confirmation based on the Disclosure Statement, the Plan or this Confirmation

Order, except where such claims or Debtor Causes of Action have been expressly waived and

released in the Plan.

        26.    <u>Release of Liens</u>.  Except as otherwise provided in the Plan or in any

contract, instrument, release, or other agreement or document created in connection with the

Plan, on the Effective Date all Liens against the property of the Debtor's estate, including,

without limitation, the Assets, shall be released, and all right, title and interest of any holder of

such Liens shall revert to the Post-Confirmation Debtor.

        27.    <u>Retention of Jurisdiction</u>.  Following the Effective Date, the Court shall

retain jurisdiction over the Chapter 11 Case to the extent legally permissible, including, without

limitation, such jurisdiction as is necessary to ensure that the purposes and intent of the Plan are

carried out.  Without in any way limiting the scope of the Court's retention of jurisdiction over

the Chapter 11 Case as otherwise provided for in the Plan, the Court shall retain jurisdiction for

the specific purposes provided for in Sections 12.1 of the Plan, including, without limitation, (i)

to classify, resolve objections to, and determine or estimate, pursuant to section 502(c) of the

Bankruptcy Code or otherwise, all Proofs of Claims and Claims and Interests, and (ii) to

adjudicate and enforce all claims and Debtor Causes of Action which have not been waived and

released by the Debtor pursuant to the Plan or otherwise.

        28.    <u>Defects, Omissions and Amendments</u>.  The Debtor may insofar as it does

not materially and adversely affect Holders of Claims, correct any defect, omission or

inconsistency in the Plan in such manner and to such extent as may be necessary or desirable to

implement the Plan.  The Plan may be altered or amended (i) with respect to non-material

alterations or amendments, upon notice to the U.S. Trustee, and (ii) with respect to non-material

alterations or amendments, before or after Confirmation as provided in section 1127 of the

Bankruptcy Code if, in the opinion of the Bankruptcy Court, the modification does not materially

and adversely affect the interests of Holders of Claims and Interests, so long as the Plan, as

modified, complies with sections 1122 and 1123 of the Bankruptcy Code and the Plan

Proponents have complied with section 1125 of the Bankruptcy Code.  For the avoidance of

doubt, the Debtor shall be required to seek Bankruptcy Court approval of any material alterations

or amendments of the Plan upon appropriate notice and a hearing.

29.     Certain Actions.  By reason of entry of this Confirmation Order, prior to,

on or after the Effective Date, as appropriate, any and all matters provided for under the Plan that

would otherwise require approval of the Board of Managers of the Debtor or the Holders of

Equity Interests, including, without limitation, (i) the distribution of Cash pursuant to the Plan,

(ii) the adoption, execution, delivery, and implementation of all contracts, leases, instruments,

releases, and other agreements or documents related to the Plan, including, without limitation,

the Plan Administration Agreement, (iii) the transfer or other disposition of Assets pursuant to

the Plan and (iv) the adoption, execution, and implementation of other matters provided for

under the Plan involving the Debtor or its Assets, shall be deemed to have occurred and shall be

in effect prior to, on or after the Effective Date, as appropriate, pursuant to the applicable limited

liability company law of the State of New York, without any requirement of further action by the

stockholders, directors, or officers of the Debtor or the Holders of Equity Interests.

30.     Further Actions; Implementation.  The Debtor and the Post-Confirmation

Debtor, as applicable, shall be authorized to execute, deliver, file or record such documents,

contracts, instruments, releases and other agreements and take such other or further actions as

may be necessary to effectuate or further evidence the terms and conditions of the Plan.  In the

case of the Debtor, upon Confirmation, and in the case of the Post-Confirmation Debtor, upon

the Effective Date, the Debtor and the Post-Confirmation Debtor, as applicable, shall be

authorized to take any and all steps and execute all documents necessary to effectuate the

provisions contained in the Plan.

        31.    <u>Automatic Stay</u>.  The automatic stay provided for under section 362 of the

Bankruptcy Code shall remain in effect until the Effective Date.

        32.    <u>Role of Committee</u>.  Upon the Effective Date, the Committee shall be

dissolved automatically, whereupon its members, professionals and agents, in each case solely in

their capacity as such, shall be released from any further duties and responsibilities in the

Chapter 11 Case and under the Bankruptcy Code and Bankruptcy Rules; <u>provided</u>, <u>however</u>, that

the Committee shall continue to exist in the Chapter 11 Case for the sole and limited purpose of

filing and prosecuting any remaining fee applications therein and the Professionals retained by

the Committee shall be entitled to reasonable compensation for services performed and

reasonable reimbursement of expenses incurred in connection therewith in accordance with the

terms and conditions of the Plan and any applicable orders of the Court.

        33.    <u>Dissolution of Post-Confirmation Debtor</u>.  Subsequent to the Effective

Date and upon entry of a final decree closing the Chapter 11 Case, without the need for further

action on the part of the Post-Confirmation Debtor or the Board of Managers or the approval of

the Court, the Post-Confirmation Debtor may cause the Post-Confirmation Debtor to dissolve

pursuant to applicable state law.

        34.    <u>Payment of United States Trustee Quarterly Fees</u>.  All fees due and

payable pursuant to section 1930 of Title 28 of the United States Code prior to the Effective Date

shall be paid by the Debtor.  On and after the Effective Date, the Post-Confirmation Debtor shall

pay any and all such fees when due and payable from the Plan Fund, and shall file with the

Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee.

35.    <u>Section 1146 Exemption</u>.  Pursuant to section 1146(a) of the Bankruptcy

Code, the issuance, transfer or exchange of any security under the Plan or the making or delivery

of any instrument of transfer pursuant to, in implementation of, or as contemplated by the Plan,

or the re-vesting, transfer or sale of any real or personal property of the Debtor pursuant to, in

implementation of, or as contemplated by the Plan, shall not be taxed under any state or local law

imposing a stamp tax, transfer tax or any similar tax or fee.

36.    <u>Rules Governing Conflicts Between Documents</u>.  In the event of a conflict

between the terms of the Plan and any contract, instrument, release, or other agreement or

document created or entered into in connection with the Plan, the terms of the Plan shall control

over any such documents.  In the event of a conflict between the terms of the Plan or any

contract, instrument, release, or other agreement or document entered into in connection with the

Plan, on the one hand, and the terms of this Confirmation Order, on the other hand, the terms of

this Confirmation Order shall control.  In the event of a conflict between the information

contained in the Disclosure Statement, on the one hand, and the terms of the Plan, this

Confirmation Order or any contract, instrument, release, or other agreement or document entered

into in connection with the Plan, on the other hand, the Plan, this Confirmation Order or any

contract, instrument, release, or other agreement or document entered into in connection with the

Plan (as the case may be) shall control.

37.    <u>Headings</u>.  The headings used in this Confirmation Order are contained in

this Confirmation Order for convenience purposes only and neither constitute a portion of this

Confirmation Order nor in any manner affect the provisions of this Confirmation Order.

38.     <u>Substantial Consummation</u>.  On the Effective Date, the Plan shall be deemed substantially consummated under Bankruptcy Code sections 1101 and 1127(b).

39.     <u>Waiver of Fourteen (14) Day Stay</u>.  Pursuant to Bankruptcy Rule 3020(e) and, to extent applicable, Bankruptcy Rule 6004(h), the fourteen-day stay of this Confirmation Order imposed thereby is waived and this Confirmation Order shall be effective and enforceable immediately upon its entry.

40.     <u>Reference to and Validity and Enforceability of Plan Provisions</u>.  The failure to reference any particular provision of the Plan in this Confirmation Order shall not impair, prejudice, waive or otherwise affect the binding effect, enforceability or legality of such provisions, and such provisions shall have the same binding effect, enforceability or legality as every other provision of the Plan and this Confirmation Order.  Each term and provision of the Plan, as it may have been altered or interpreted by this Court, is valid and enforceable pursuant to its terms.

Dated:   New York, New York
         December 16, 2010

/s/Burton R. Lifland
HONORABLE BURTON R. LIFLAND
UNITED STATES BANKRUPTCY JUDGE

**<u>EXHIBIT A</u>**

Plan

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| ARENA MEDIA NETWORKS, LLC, | : | Case No.  10-10667(BRL) |
|  | : |  |
| Debtor. | : |  |
|  | : |  |

## FIRST AMENDED PLAN OF LIQUIDATION OF ARENA
## MEDIA NETWORKS, LLC UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Arena Media Networks, LLC, debtor and debtor in possession in the above-captioned chapter 11 case, proposes the following first amended chapter 11 plan of liquidation ("Plan") pursuant to section 1121(b) of title 11 of the United States Code:

## ARTICLE I.

### DEFINITIONS AND INTERPRETATION

**DEFINITIONS.** As used in the Plan, the following terms shall have the respective meanings specified below, unless the context otherwise requires:

**1.1 Access** means Access 360 Media, Inc., the DIP Lender (defined below) and the purchaser of substantially all of the Debtor's assets pursuant to the Access Sale (defined below).

**1.2 Access APA** means that certain Asset Purchase Agreement dated as of February 8, 2010 by and between Arena Media Networks, LLC and Access 360 Media, Inc.

**1.3 Access Sale** means the sale of substantially all of the assets of Arena (defined below) pursuant to the Access APA, as approved by the Access Sale Order (defined below) which substantially closed on March 31, 2010.

**1.4 Access Sale Order** means the Order (A) Approving the Sale of Certain Assets of the Debtor Free and Clear of Liens, Claims and Encumbrances Pursuant to 11 U.S.C. § 363, (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Rejection of all Non-Assumed and Assigned Unexpired Leases and Executory Contracts, and (C) Granting Related Relief Pursuant to Bankruptcy Code § 105 and Granting Related Relief, dated March 22, 2010.

**1.5 Administrative Expense Claim** means any Claim under sections 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the assets of the Debtor, any actual and necessary expenses of operating the business of the Debtor, all compensation and reimbursement of expenses allowed by the

Bankruptcy Court under sections 330 or 503 of the Bankruptcy Code, and any fees and charges assessed against the Debtor under section 1930 of chapter 123 of title 28 of the United States Code.

**1.6** **Allowed** means any Claim, (a) proof of which was timely and properly filed, or if no proof of claim was timely and properly filed, which is listed by the Debtor on its Schedules as liquidated in amount and not disputed or contingent, and in either case, (i) as to which no objection to the allowance thereof or request for estimation has been interposed or (ii) to the extent any objection to the allowance thereof or request for estimation interposed in accordance with clause (i) has been determined by a Final Order in favor of the holder of such Claim, (b) to the extent allowed by a Final Order or the provisions of the Plan, or (c) that is an Administrative Expense Claim the amount to which the Debtor and the claimant have agreed should be allowed pursuant to a written agreement.  Unless otherwise specified in the Plan or by order of the Bankruptcy Court, "Allowed Administrative Expense Claim" and "Allowed Claim" shall not, for purposes of computing distributions under the Plan, include interest on such Claim from and after the Commencement Date, except as provided in section 506(b) of the Bankruptcy Code.  A Claim which is Allowed as of the Record Date and which may thereby entitle the holder of such Claim to vote on the Plan, shall not be deemed Allowed for purposes of distributions in accordance with the Plan unless the Claim is not a Disputed Claim and the time for objections to Claims as established by the Plan or Bankruptcy Court Order has expired.

**1.7** **Arena** means Arena Media Networks, LLC.

**1.8** **Bankruptcy Code** means Title 11 of the United States Code, as amended from time to time.

**1.9** **Bankruptcy Court** means the United States District Court for the Southern District of New York, having jurisdiction over the Chapter 11 Case, and, to the extent of the reference of the Chapter 11 Case pursuant to 28 U.S.C. § 157(a), the United States Bankruptcy Court for the Southern District of New York.

**1.10** **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 Case, including the local rules of the Bankruptcy Court.

**1.11** **Bar Date** means April 28, 2010, the deadline to file proofs of claim, except for proofs of claim related to rejection damages claims, for which the deadline to file proofs of claim was June 21, 2010.

**1.12** **BNYH** means collectively, BNYH AMN Holdings LLC and BNYH AMN Parallel Holdings LLC, the Debtor's pre-petition secured lenders pursuant to a certain Securities Purchase and Loan Agreement dated as of October 31, 2007, as amended, modified and supplemented from time to time.

**1.13** **BNYH Loan** means the loans and other advances made to Arena by BNYH secured by substantially all of Arena's assets, pursuant to the BNYH Loan Agreement.

2

**1.14    BNYH Loan Agreement** means the certain Securities Purchase and Loan Agreement dated as of October 31, 2007, as amended, modified and supplemented from time to time, between Arena, as borrower, and BNYH, as lender.

**1.15    BNYH Secured Claim** means the secured claim asserted by BNYH in the aggregate amount of $15,826,441.12, secured by substantially all of the Debtor's assets.

**1.16    Business Day** means any day other than a Saturday, a Sunday, any other day on which commercial banks in New York City, New York are required or authorized to close by law or executive order.

**1.17    Cash** means cash and cash equivalents, including, but not limited to, bank deposits, checks, and other similar items.

**1.18    Causes of Action** means any and all rights, claims, causes of action, suits and proceedings, including, but not limited to actions commenced, or that may be commenced before or after the Effective Date by or on behalf of the Debtor and/or the Estate, pursuant to, inter alia, section 544, 545, 547, 548, 550 or 551 of the Bankruptcy Code.

**1.19    Chapter 11 Case** means the case under chapter 11 of the Bankruptcy Code, commenced by the Debtor, styled "In re Arena Media Networks, LLC" and being administered in the Bankruptcy Court under case number 10-10667 (BRL).

**1.20    Claim** shall have the meaning assigned to such term in section 101(5) of the Bankruptcy Code.

**1.21    Claimant** means the holder of a Claim as defined by section 101(5) of the Bankruptcy Code.

**1.22    Class** means any group of substantially similar Claims or Equity Interests classified by the Plan pursuant to section 1123(a)(1) of the Bankruptcy Code.

**1.23    Collateral** means any property or interest in property of the Estate of the Debtor subject to a lien to secure the payment or performance of a Claim, which lien is valid, perfected and enforceable under applicable law, and is not subject to avoidance under the Bankruptcy Code or other applicable law.

**1.24    Commencement Date** means February 8, 2010, the date on which the Debtor commenced the Chapter 11 Case.

**1.25    Confirmation Date** means the date upon which the Bankruptcy Court enters an order confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

**1.26    Confirmation Hearing** means the hearing or hearings held by the Bankruptcy Court to consider confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

**1.27**    __Confirmation Order__ means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

**1.28**    __Creditor Released Parties__ means BNYH AMN Holdings LLC and BNYH AMN Parallel Holdings LLC, and any of their respective current and former members, parents, affiliates, subsidiaries, divisions, officers, directors, shareholders, employees, attorneys, accountants, agents, successors, heirs, executors, administrators and/or assigns, in each case solely in their capacity as such.

**1.29**    __Creditors Committee__ means the statutory committee of unsecured creditors appointed by the Office of the United States Trustee in the Chapter 11 Case pursuant to section 1102 of the Bankruptcy Code.

**1.30**    __Debtor__ means the debtor, Arena Media Networks, LLC, both before and after the Commencement Date as a Debtor in Possession pursuant to section 1107 of the Bankruptcy Code.

**1.31**    __DIP Loan__ means the post-petition loans to the Debtor made by Access 360 Media, Inc. up to the maximum aggregate amount of $800,000.

**1.32**    __DIP Lender__ means Access 360 Media, Inc., the Debtor's post-petition lender pursuant Loan and Security Agreement dated as of February 8, 2010.

**1.33**    __DIP Order__ means, together, (x) the Interim Order Approving Debtor's Motion for Order (I) Authorizing Debtor to Obtain Interim Postpetition Financing and to Grant Security Interests and Superpriority Administrative Expense States Pursuant to 11 U.S.C. §§ 105, 364(c) and 364(d); and (II) Modifying the Automatic Stay Pursuant to 11 U.S.C. § 362, dated February 9, 2010 and (y) the Final Order Approving Debtor's Motion for Order (I) Authorizing Debtor to Obtain Postpetition Financing and to Grant Security Interests and Superpriority Administrative Expense Status Pursuant to 11 U.S.C. §§ 105, 364(c) and 364(d); and (II) Modifying the Automatic Stay Pursuant to 11 U.S.C. § 362, dated February 25, 2010.

**1.34**    __Disbursing Agent__ means Klestadt & Winters, LLP, which shall act in such capacity in order to effectuate the distributions under the Plan.

**1.35**    __Disclosure Statement__ means the disclosure statement relating to the Plan, including, without limitation, all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

**1.36**    __Disputed__ means, with respect to a Claim, any such Claim (a) as to which no Proof of Claim was timely and properly filed and that is scheduled by the Debtor as disputed, unliquidated or contingent, or (b) proof of which was timely and properly filed, and (i) which has been or is listed on the Schedules as unliquidated, disputed or contingent, and which has not been resolved by written agreement of the parties or by an order of the Bankruptcy Court or (ii) as to which the Debtor or any other party in interest, has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, which objection

or request for estimation has not been withdrawn or determined by a Final Order.  Prior to (x) the filing of an objection to a Claim or (y) the expiration of the time within which to object to such Claim set forth in the Plan or otherwise established by order of the Bankruptcy Court, for purposes of the Plan, a Claim shall be considered a Disputed Claim if (i) the amount of the Claim specified in the proof of Claim exceeds the amount of the Claim scheduled by the Debtor as other than disputed, contingent or unliquidated or (ii) the Claim is not listed on the Schedules. Because the holders of Allowed Equity Interests will not receive any distributions on account of such Equity Interests, no Equity Interest, or any portion thereof, shall be considered a Disputed Claim.

1.37    **Disputed Administrative/Priority Claims Reserve** means an amount of Cash funded from the Plan Fund to satisfy Claims of (i) the holders of Disputed Administrative Expense Claims and (ii) Disputed Priority Claims, under the Plan if all such Claims are subsequently Allowed.

1.38    **Disputed Claims Reserves** mean the Disputed Administrative/Priority Claims Reserve and the Disputed General Unsecured Claims Reserve.

1.39    **Disputed General Unsecured Claims Reserve** means an amount of Cash funded from the Plan Fund sufficient to make distributions on account of Claims of holders of Disputed General Unsecured Claims under the Plan if such Claims are subsequently Allowed.

1.40    **Effective Date** means the date on which the Plan shall become effective, which date shall be as soon as reasonably practicable after the date on which the conditions specified in section 10.1 of the Plan have been satisfied or waived.

1.41    **Equity Interest** means the interest of any holder of membership interests in the Debtor represented by the issued and outstanding shares of common or preferred membership units of the Debtor, including any existing options, warrants or rights, contractual or otherwise, to acquire such equity securities.

1.42    **Estate** means the estate created pursuant to section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

1.43    **Final Order** means an order of the Bankruptcy Court as to which the time to appeal, petition for *certiorari* or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari or motion for reargument or rehearing is then pending or as to which any right to appeal, petition for *certiorari* or move to reargue or rehear shall have been waived in writing in form and substance satisfactory to the Debtor or, in the event that an appeal, writ of *certiorari* or reargument or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been upheld by the highest court to which such order was appealed, or from which *certiorari*, reargument or rehearing was sought and the time to take any further appeal, petition for *certiorari* or move for reargument or rehearing shall have expired.

1.44    **General Unsecured Claim** means any Unsecured Claim against the Debtor that is not an Administrative Expense Claim, Priority Tax Claim or Priority Non-Tax Claim.

**1.45** **IRC** means the Internal Revenue Code of 1986, as amended, and any applicable rulings, Treasury Regulations (including temporary and proposed regulations) promulgated thereunder, judicial decisions, notices, announcements, and other releases of the United States Treasury Department or the IRS.

**1.46** **IRS** means the United States Internal Revenue Service.

**1.47** **Other Secured Claim** means any Secured Claim other than the DIP Claim and the BNYH Secured Claim.

**1.48** **Person** means any individual, corporation, partnership, association, joint venture, estate, trust, unincorporated organization or governmental unit or subdivision thereof or other entity.

**1.49** **Plan** means this Chapter 11 plan, including all exhibits and schedules annexed hereto, either in its present form or as it may be altered, amended or modified from time to time.

**1.50** **Plan Fund** means a segregated fund containing (a) the cash proceeds of the Access Sale, in the amount of $110,000, which is subject to the liens and security interests of BNYH, (b) all proceeds of Causes of Action, if any, and (c) any other funds which become available to the Estate, but excluding the Professional Fee Fund (defined below).

**1.51** **Priority Claim** means a Priority Tax Claim or Priority Non-Tax Claim.

**1.52** **Priority Non-Tax Claim** means any Claim, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment under section 507(a) of the Bankruptcy Code.

**1.53** **Priority Tax Claim** means any Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**1.54** **Professional Fee Fund** means a segregated fund composed of (a) $75,000, funded pursuant to the DIP Loan; and (b) $50,000.00, held for the exclusive benefit of the professionals retained in the Chapter 11 Case by the Debtor and the Creditors Committee.

**1.55** **Pro Rata** means the proportion that the amount of any Claim in a particular class bears to the aggregate amount of all Claims in such Class, including Disputed Claims.

**1.56** **Record Date** means the date that the Bankruptcy Court enters an Order approving the Disclosure Statement.

**1.57** **Rejection Damages Bar Date** means June 21, 2010, the deadline to file proofs of claim arising out of the Debtor's rejection of executory contracts and unexpired leases, as fixed by the Order Establishing Deadline for Filing Proofs of Claim Related to Rejection Damages Claims and Approving the Form and Manner of Notice Thereof entered on May 13, 2010.

**1.58**    <u>**Schedules**</u> means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor as required by section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, including any supplements or amendments thereto through the Confirmation Date.

**1.59**    <u>**Secured Claim**</u> means a Claim held by any entity against the Debtor secured by Collateral, but only to the extent of the value, as set forth in the Plan, as agreed to by the holder of such Claim and the Debtor, or as determined by a Final Order of the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code, of such entity's interest in the Estate's interest in such Collateral; <u>provided</u>, <u>however</u>, that a Secured Claim shall not include any portion of the Claim to the extent that the value of such entity's interest in the Collateral is less than the amount of such Claim.

**1.60**    <u>**Tax Claim**</u> means a (i) Priority Tax Claim or (ii) an Administrative Expense Claim or Secured Claim to the extent such Administrative Expense Claim or Secured Claim is a Claim based on taxes due to a taxing authority.

**1.61**    <u>**Transfer Taxes**</u> means any sales, use, notorial, or other transfer taxes (including any interest and penalties) that have been or may be assessed with respect any sale of assets by the Debtor since the Commencement Date.

**1.62**    <u>**Treasury Regulations**</u> means final, temporary and proposed regulations promulgated by the U.S. Treasury Department with respect to the IRC.

**1.63**    <u>**Unsecured Claim**</u> means any Claim which is not secured by a "lien," as that term is defined in section 101(37) of the Bankruptcy Code, including, but not limited to, a "judicial lien" as that term is defined at section 101(36) of the Bankruptcy Code, against any property of the Estate, but only to the extent of the "value," as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code and Bankruptcy Rule 3012 or as otherwise agreed to, of such Claimant's interest in the Debtor's interest in such property.

**1.64**    <u>**U.S. Trustee**</u> means any and all representatives and employees of the Office of the United States Trustee for the Southern District of New York.

<u>OTHER TERMS</u>.

A term used in the Plan that is not defined shall have the meaning ascribed to that term, if any, in the Bankruptcy Code.

<u>CONSTRUCTION OF CERTAIN TERMS</u>.

(a)    The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan.

(b)    Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural and pronouns stated in

the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter.

## ARTICLE II.

### TREATMENT OF UNCLASSIFIED CLAIMS -- ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

**2.1** **Administrative Expense Claims.** Except to the extent the holder of an Allowed Administrative Expense Claim agrees otherwise, each holder of an Allowed Administrative Expense Claim shall be paid in respect of such Allowed Claim (a) the full amount thereof in Cash, as soon as practicable after the later of (i) the Effective Date and (ii) the date on which such Claim becomes an Allowed Claim, or upon other agreed terms between the holder of such claim and the Debtor, or (b) such lesser amount as the holder of an Allowed Administrative Expense Claim and the Debtor might otherwise agree.

**2.2** **Priority Tax Claims.** Except to the extent the holder of an Allowed Priority Tax Claim agrees otherwise, each holder of an Allowed Priority Tax Claim, shall receive, pursuant to Section 1129(a)(9)(A) of the Bankruptcy Code, on account of such Allowed Priority Tax Claim, (a) the full amount thereof in Cash, as soon as practicable after the later of (i) the Effective Date and (ii) the date on which such Claim becomes an Allowed Claim, or upon other agreed terms between the holder of such claim and the Debtor, or (b) such lesser amount as the holder of an Allowed Administrative Expense Claim and the Debtor might otherwise agree.

## ARTICLE III.

### CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

The following table designates the Classes of Claims, other than Administrative Expense Claims and Priority Tax Claims, and specifies which of those classes are (i) impaired or unimpaired by the Plan, (ii) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, and (iii) deemed to reject the Plan:

| Class | Status |
|---|---|
| Class 1: Priority Non-Tax Claims | Not Impaired / Deemed to Accept |
| Class 2: DIP Claim | Not Impaired / Deemed to Accept |
| Class 3: BNYH Secured Claim | Impaired / Entitled to Vote |
| Class 4: Other Secured Claims | Not Impaired / Deemed to Accept |
| Class 5: General Unsecured Claims | Impaired / Entitled to Vote |
| Class 6: Equity Interests | Impaired / Deemed to Reject |

8

# ARTICLE IV.

## TREATMENT OF CLAIMS AND EQUITY INTERESTS

**4.1**    **Class 1 – Priority Non-Tax Claims.**

    **(a)** **Impairment and Voting.** Class 1 is not impaired by the Plan.  For purposes of the Plan, each holder of an Allowed Claim in Class 1 is conclusively deemed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

    **(b)** **Distributions.**  On the Effective Date, or as soon thereafter as is reasonably practical, each holder of an Allowed Priority Non-Tax Claim and/or an Allowed Priority Non-Tax Claim against the Debtor shall receive an amount in Cash equal to the Allowed amount of such Priority Non-Tax Claim; provided, however, that in the event there exists any Disputed Priority Non-Tax Claims on the Effective Date, the Disbursing Agent shall at all times hold and maintain Cash in an amount equal to that portion of the Disputed Administrative/Priority Claims Reserve attributable to all Disputed Priority Non-Tax Claims.

**4.2**    **Class 2 –DIP Claim.**

    **(a)** **Impairment and Voting.**  Class 2 is not impaired by the Plan.  For purposes of the Plan, the holder of the DIP Claim is conclusively deemed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

    **(b)** **Distributions.**  The DIP Claim was indefeasibly paid in full and extinguished on March 31, 2010, upon the closing of the Access Sale, and accordingly, the DIP Lender will receive no distributions under the Plan.

**4.3**    **Class 3—BNYH Secured Claim.**

    **(a)** **Impairment and Voting.** Class 3 is impaired by the Plan. The holders of the BNYH Secured Claim are entitled to vote to accept or reject the Plan.

    **(b)** **Distributions**. BNYH has agreed to waive distribution under the Plan. Accordingly, BNYH will receive no distributions under the Plan.

**4.4**    **Class 4—Other Secured Claims.**

    **(a)** **Impairment and Voting.** Class 4 is not impaired by the Plan. The holders of Other Secured Claims are conclusively deemed to have accepted the Plan and are not entitled to vote to accept or reject the Plan.

    **(b)** **Distributions**. Holders of Other Secured Claims shall be paid by transfer of the Collateral securing such Claim to the holder of such Other Secured Claim.

**4.5**    **Class 5 –General Unsecured Claims.**

(a) **Impairment and Voting.**  Class 5 is impaired by the Plan.  Each holder of an Allowed Claim in Class 5 is entitled to vote to accept or reject the Plan.

(b) **Distributions.**  On the Effective Date, or as soon thereafter as reasonably practical, each holder of an Allowed General Unsecured Claim will receive one or more distributions of their respective Pro Rata share of the Plan Fund, subject to Sections 6.8 and 8.1 of the Plan, provided that any holder of an Allowed General Unsecured Claim that elects to opt out of the releases described in section 11.3(f) of the Plan shall receive no distribution from the Plan Fund. The distributions that would otherwise have been made to any such opting-out holder shall instead be allocated Pro Rata to General Unsecured Creditors who have not opted out of such releases.

**4.6**    **Class 6 –Equity Interests.**

(a) **Impairment and Voting.**  Class 6 is impaired by the Plan.  Each holder of an Allowed Claim in Class 6 shall be deemed to have rejected the Plan.

(b) **Distributions.**  Class 6 will receive no distributions under the Plan. On the Effective Date, the common membership units and preferred membership units and other instruments evidencing Equity Interests in the Debtor shall be cancelled without further action under any applicable agreement, law, regulation, order or rule, and the Equity Interests evidenced thereby shall be extinguished.

## ARTICLE V.

### ACCEPTANCE OR REJECTION OF THE PLAN

**5.1**    **Voting of Claims.**  Each holder of an Allowed Claim as of the Record Date in Classes 3 and 5 shall be entitled to vote to accept or reject the Plan.

**5.2**    **Acceptance by Impaired Class.**  Consistent with section 1126(c) of the Bankruptcy Code, and except as provided for in section 1126(e) of the Bankruptcy Code, a Class of creditors shall have accepted the Plan if it is accepted by at least two-thirds in dollar amount and more than one-half in number of the holders of Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan.

**5.3**    **Presumed Acceptances of Plan.**  Classes 1, 2 and 4 are unimpaired under the Plan and, therefore, is conclusively presumed to have accepted the Plan.

**5.4**    **Presumed Rejections of Plan.**  Class 6 is conclusively presumed to have rejected the Plan.

**5.5**    **Cram Down.**  In the event that Class 3 or 5 accepts the Plan, the Debtor reserves its right to request that the Bankruptcy Court confirm the Plan in accordance with the provisions of section 1129(b) of the Bankruptcy Code to satisfy the requirements for confirmation of the Plan over the presumed rejection of Class 6.

10

# ARTICLE VI.

## IMPLEMENTATION

**6.1    Plan Fund.**  The Disbursing Agent shall pay plan administration costs from the Plan Fund, including, but not limited to, post-confirmation professionals' fees related to and taxes of the Plan Fund and the Disputed Claims Reserves, including the costs of prosecuting Causes of Action.  After all costs associated with the Plan Fund have been paid, and/or upon the reasonable determination that the funds in the Plan Fund exceed the amounts necessary to pay the expenses for which such fund is established, the remaining or excess funds, as applicable, in the Plan Fund shall be distributed by the Disbursing Agent to the holders of Allowed Claims as provided in this Plan.

**6.2    Causes of Action.**  The Debtor shall retain its interest in the Causes of Action. Any proceeds received from the Causes of Action will be transferred into the Plan Fund for distribution in accordance with the Plan.

**6.3    Distributions of Cash.**  Any payment of Cash made by the Disbursing Agent pursuant to the Plan may be made at the option of the Debtor either by check drawn on a domestic bank or by wire transfer from a domestic bank.

**6.4    Distributions Free and Clear.**  Any distributions or transfers by the Disbursing Agent, including, but not limited to, distributions to any holder of an Allowed Claim, shall be free and clear of any liens, claims and encumbrances, and no other entity, including the Debtor or the Disbursing Agent shall have any interest, legal, beneficial or otherwise, in assets transferred pursuant to the Plan.

**6.5    Time Bar to Cash Payments.**  Checks issued by the Disbursing Agent in respect of Allowed Claims shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof.  Requests for reissuance of any check shall be made to the Disbursing Agent by the holder of the Allowed Claim to whom such check originally was issued.  Any Claim in respect of such a voided check shall be made on or before thirty (30) days after the expiration of the sixty day period following the date of issuance of such check.  Thereafter, the amount represented by such voided check shall irrevocably revert to the Plan Fund from which such amount was distributed, and any Claim in respect of such voided check shall be discharged and forever barred from assertion against the Debtor, its property, or its Estate.

**6.6    Withholding and Reporting Requirements.**  In connection with the Plan, the Disbursing Agent shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements.

**6.7    Delivery of Distributions and Undeliverable Distributions.**  Distributions to holders of Allowed Claims shall be made at the address of each such holder as set forth on the Schedules filed with the Bankruptcy Court, unless superseded by a new address as set forth (a) on a proof of claim filed by a holder of an Allowed Claim or (b) in another writing notifying the

Debtor or Disbursing Agent (at the addresses set forth in the Plan) of a change of address.  If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Debtor or Disbursing Agent is notified of such holder's then-current address, at which time all missed distributions shall be made to such holder, without interest.  All demands for undeliverable distributions shall be made on or before ninety (90) days after the date such undeliverable distribution was initially made.  Thereafter, the amount represented by such undeliverable distribution shall irrevocably revert to the fund from which such amount was distributed, and any Claim in respect of such undeliverable distribution shall be discharged and forever barred from assertion against the Debtor, its property, or the Estate.

6.8     **Setoffs.**  Except as otherwise provided in the Plan, the Confirmation Order, or in agreements previously approved by Final Order of the Court, the Debtor, pursuant to applicable law (including section 553 of the Bankruptcy Code), may offset against any Claim, before any distribution is made on account of such Claim, and all of the claims, rights, and causes of action of any nature that the Debtor may hold against the holder of such Claim; provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such claims, rights, and Causes of Action that the Debtor may possess against such holder.  To the extent the Debtor fails to set off against a creditor and seek to collect a claim from such creditor after a distribution to such creditor pursuant to the Plan, the Debtor to the extent successful in asserting such Cause of Action, shall be entitled to full recovery against such creditor.

6.9     **Compromise of Controversies.**  Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, distribution and other benefits provided under the Plan, the provisions of this Plan shall constitute a good faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements and all other compromises and settlements provided for in the Plan.  In addition, the Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtor, the Estate, creditors, and other parties in interest, and are fair, equitable, and within the range of reasonableness.

6.10     **Allocation of Distributions.**  Distributions to any holder of an Allowed Claim shall be allocated first to the principal portion of any such Allowed Claim, and, only after the principal portion (as defined for federal income tax purposes) of any such Allowed Claim is satisfied in full, to any portion of such Allowed Claim comprising prepetition interest (but solely to the extent that interest is an allowable portion of such Allowed Claim).

6.11     **Transactions on Business Days.**  If the Effective Date or any other date on which a transaction may occur under the Plan shall occur on a day that is not a Business Day, the transactions contemplated by the Plan to occur on such day shall instead occur on the next succeeding Business Day.

12

## ARTICLE VII.

### MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN

**7.1**      **Debtor's Post-Confirmation Role; Dissolution.**   After the Effective Date, the Debtor shall be the exclusive representative of the Estate under section 1123(b)(3)(B) of the Bankruptcy Code, and is authorized to take or cause to be taken all actions necessary to effectively implement the Plan. The Debtor's post-Effective Date rights and obligations shall include, but are not limited to:

**(a) Taxes.**   The Debtor shall have the powers of administration regarding all of the Debtor's tax obligations, including filing of returns.   The Debtor shall (i) use reasonable efforts to complete and file within ninety (90) days after the dissolution of the Debtor (or such longer period as authorized by the Bankruptcy Court) the Debtor's final federal, state and local tax returns, (ii) request an expedited determination of any unpaid tax liability of the Debtor or the Estate under Bankruptcy Code section 505 for all taxable periods of the Debtor through the liquidation of the Debtor as determined under applicable tax laws and (iii) represent the interest and account of the Debtor or the Estate before any taxing authority in all matters including, without limitation, any action, suit, proceeding or audit.

The Debtor may request that the Bankruptcy Court determine the amount of any Tax Claim pursuant to section 505 and/or section 502(c) of the Bankruptcy Code regardless of whether the Debtor has previously objected to such Claim, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time.   If the estimated amount constitutes a maximum limitation on such Claim, the Debtor may elect to pursue any supplemental proceeding to object to any ultimate payment of such Claim.   All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another.   On and after the Confirmation Date, Tax Claims that have been estimated may be compromised, settled, withdrawn, or otherwise resolved subsequently, without further order of the Bankruptcy Court.

**(b) Liquidation of Assets; Claims Objections**. Following the Effective Date, the Debtor shall have the exclusive authority to (i) collect and liquidate the assets of the Estate; (ii) assert, prosecute, pursue, compromise and settle in accordance with its reasonable business judgment, all Claims, Causes of Action and assert and enforce all defenses belonging to the Debtor or its Estate, including, without limitation, setoff, recoupment and any other rights under Bankruptcy Code section 502(d), and (iii) object to Disputed Claims, in accordance with its reasonable business judgment.

**(c) Compromise**. Following the Effective Date, the Debtor shall be authorized to enter into a settlement with any party upon terms and conditions which it deems appropriate in its reasonable business judgment.

**(d) Post-Confirmation Reports and Fees**. The Debtor shall cause all required post-confirmation reports to be filed with the Court. The Disbursing Agent shall pay all required post-confirmation fees from the Plan Fund when due.

13

(e) **Closing of the Chapter 11 Case.**  When all Disputed Claims have become Allowed Claims or have been disallowed by Final Order, and all remaining assets of the Debtor have been liquidated and converted into Cash (other than those assets abandoned by the Debtor), and such Cash has been distributed in accordance with the Plan, the Debtor shall seek authority from the Bankruptcy Court to close the Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules, including, without limitation, the filing of a final distribution report and request for a final decree.

(f) **Dissolution.**  Within thirty (30) days after its completion of the acts required by the Plan (and all distributions required to be made under the Plan have been made), or as soon thereafter as is practical, the Debtor shall file a certificate of dissolution for the Debtor, together with all other necessary corporate documentation, to effect its dissolution under the applicable laws of the State of New York.

7.2    **Books and Records.** The Debtor's books and records shall be maintained by the Debtor through the closing of the Chapter 11 Case or as otherwise required by applicable law. Books and records include computer generated or computer maintained books and records and computer data, as well as electronically generated or maintained books and records or data, along with books and records of the Debtor maintained by or in possession of third parties and all of the claims and rights of the Debtor in and to its books and records, wherever located.

7.3    **Corporate Action.**  Upon the Effective Date, the Debtor shall perform each of the actions and effect each of the transfers required by the terms of the Plan, in the time period allocated therefor. The filing of certificates of dissolution by the Debtor in accordance with Section 7.1(e) of the Plan is hereby authorized and approved in all respects without further action under applicable law, regulation, order or rule, including, without express or implied limitation, any action by the holders of Equity Interests in the Debtor or the Board of Managers of the Debtor.

7.4    **Effectuating Documents and Further Transactions**.  Each of the officers of the Debtor is authorized and directed to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents and take such actions as the Debtor determines to be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

7.5    **Administrative Expense Claim Bar Date.**  Unless otherwise ordered by the Bankruptcy Court, requests for payment of Administrative Expense Claims (other than the Administrative Expense Claims of professional Persons employed by the Debtor and the Creditors Committee) for the period from February 8, 2010, through and including the Effective Date must be filed and served on the Debtor no later than thirty (30) days after the Effective Date.  Any person that is required to file and serve a request for payment of an Administrative Expense Claim and fails to timely file and serve such request, shall be forever barred, estopped and enjoined from asserting such Administrative Expense Claim or participating in distributions under the Plan on account thereof.

## ARTICLE VIII.

### PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS

**8.1**    **No Distribution Pending Allowance.**  Notwithstanding any other provision of the Plan, no Cash or other property shall be distributed under the Plan on account of any Disputed Claim, unless and until such Claim becomes an Allowed Claim.

**8.2**    **Resolution of Disputed Claims.**  Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, the Debtor shall have the right to the exclusion of all others to make and file objections to Claims, and shall serve a copy of each objection upon the holder of the Claim to which the objection is made as soon as practicable.  Objections to Claims shall be filed with the Bankruptcy Court and served upon each affected creditor within ninety (90) days of the Effective Date; provided, however, that such deadline may be extended by the Bankruptcy Court upon motion.

**8.3**    **Estimation.**  The Debtor may request that the Bankruptcy Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtor has previously objected to such Claim, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time.  In the event that the Bankruptcy Court estimates any Disputed Claim, that estimated amount may constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Debtor may elect to pursue any supplemental proceedings to object to any ultimate payment of such Claim.  All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another.  On and after the Confirmation Date, Claims that have been estimated may be compromised, settled, withdrawn or otherwise resolved subsequently, without further order of the Bankruptcy Court.

**8.4**    **Allowance of Disputed Claims.**  If, on or after the Effective Date, any Disputed Claim in a Class that is entitled to receive a distribution under the Plan becomes an Allowed Claim, the Disbursing Agent shall, no later than the thirtieth (30th) Business Day of the first month following the month in which the Claim becomes an Allowed Claim, distribute to the holder of such Allowed Claim Cash in an aggregate amount sufficient to pay to such holder of a Disputed Claim the amount that such holder would have been entitled to receive under the Plan if such Claim had been an Allowed Claim on the Effective Date, without interest.  The applicable Disputed Claims Reserve shall be reduced by any such distribution under this section of the Plan.

**8.5**    **Disallowance of Claims Without Further Order of the Court.**  As of the Confirmation Date, any prepetition Claim that is scheduled as disputed, contingent or unliquidated in amount, and for which a proof of Claim has not been filed, shall be deemed disallowed and expunged, without further act or deed.

15

# ARTICLE IX.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**9.1**      **Executory Contracts and Unexpired Leases.**   On the Confirmation Date, all executory contracts and unexpired leases that exist between the Debtor and any Person shall be deemed rejected as of the Confirmation Date, except for (a) any executory contract or unexpired lease that has been assumed or rejected pursuant to an order of the Bankruptcy Court entered prior to the Confirmation Date, and (b) any executory contract or unexpired lease as to which a motion for approval of the assumption of such contract or lease has been filed and served prior to the Confirmation Date.

**9.2**      **Claims Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan.** Claims arising out of the rejection of an executory contract or unexpired lease pursuant to the Plan shall be (i) filed and served upon the Debtor within thirty (30) days of the Confirmation Date, or be forever barred, and (ii) classified as Class 5 –General Unsecured Claim and distributions shall be paid out accordingly.

# ARTICLE X.

## EFFECTIVENESS OF THE PLAN

**10.1**    **Conditions Precedent to the Confirmation of the Plan.**   The following are conditions precedent to the confirmation of the Plan:

**(a)**  The Bankruptcy Court shall have entered an order approving the Disclosure Statement in form and substance satisfactory to the Debtor;

**(b)**  The Bankruptcy Court shall have entered a Confirmation Order in form and substance satisfactory to the Debtor and BNYH; and

**(c)**  The Debtor shall have sufficient Cash on hand to fund the Disputed Claims Reserves and the Plan Fund.

**10.2**    **Effective Date of Plan.**   The Plan shall be effective once the Confirmation Order becomes a Final Order, or as soon as thereafter as is reasonably practicable.

# ARTICLE XI.

## EFFECTS OF CONFIRMATION

**11.1**    **Re-Vesting of Assets in Debtor.**

**(a)**  As of the Effective Date, the property of the Estate shall re-vest in the Debtor free and clear of all Claims.

16

(b)  From and after the Effective Date, the Debtor may dispose of assets free of any restrictions of the Bankruptcy Code, but in accordance with the provisions of the Plan.

**11.2  Cancellation of Securities.**  All Equity Interests in the Debtor and any other note, bond, indenture or other instrument or document evidencing or creating any indebtedness or obligation of the Debtor shall be deemed canceled on the Effective Date.

**11.3  Releases and Injunction.**

(a)  **Satisfaction of Claims and Interests in the Debtor.**  The treatment to be provided for respective Allowed Claims against or Equity Interests in the Debtor pursuant to the Plan shall be in full satisfaction, settlement and release of such respective Claims and Equity Interests.

(b)  **No Discharge**. Because the Plan is a plan of liquidation, the Confirmation Order shall not operate as a discharge pursuant to Section 1141(d)(1) of the Code

(c)  *__Injunction.__*  *As of the Confirmation Date, except as provided in the Plan or the Confirmation Order, all Persons who, directly or indirectly, have held, hold or may hold Claims against the Debtor or Equity Interests in the Debtor, are permanently enjoined from taking any of the following actions on account of any such Claims, debts, interests or liabilities, other than actions brought to enforce any rights or obligations under the Plan:  (i) commencing or continuing in any manner any action or other proceeding against the Debtor or its properties; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor or its properties; (iii) creating, perfecting or enforcing any lien or encumbrance against the Debtor or its properties; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor or its Estate, and (v) commencing or continuing, in any manner or any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.*

(d)  *__Exculpation__*.  *The Debtor and the Creditors Committee, and their members and professionals (acting in such capacity) (each, an "__Exculpated Party__"), shall neither have nor incur any liability to any Person for any action taken or omitted to be taken after the Petition Date in connection with or related to the Chapter 11 Case, including, without limitation, the preparation and filing of the Chapter 11 Case, or the formulation, preparation, dissemination, implementation, Confirmation or consummation of the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan or any act taken or omitted to be taken in connection with, in contemplation of, during or in any way related to the Chapter 11 Case, except for acts or omissions as a result of willful misconduct or gross negligence, __provided__, __however__, that the exculpation provided for in this Section 11.3 shall not affect or modify any obligations created under the Plan, or the rights of any Holder of an Allowed Claim to enforce its rights under the Plan and shall not release any action or inaction constituting willful misconduct or gross negligence, in each case subject to the determination of such by final order of a court of competent jurisdiction; __provided__ that any Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities, if any, under the Plan*

*and such reasonable reliance shall form an absolute defense to any such claim, Cause of Action or liability. Without limiting the generality of the foregoing, each Exculpated Party shall be entitled to and granted the benefits and protections of section 1125(e) of the Bankruptcy Code.*

**(e)** ___*Releases by Debtor and Estate*___. *As of the Effective Date, the Debtor and the Estate and any successors and assigns, and any Person that claims or might claim through, on behalf of, or for the benefit of any of the foregoing, shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged each of the Creditor Released Parties, the Debtor and the Debtor's officers, directors, financial advisors, accountants, attorneys, employees, agents, successors and assigns and any other Person acting on the Debtor's behalf at any time prior to the Effective Date, in each case solely in their capacity as such, from any and all Causes of Action that arise out of or relate in any way to the Chapter 11 Case, the Debtor, the Plan, the Disclosure Statement or the BNYH Loan Agreement, or any claim, act, fact, transaction, occurrence, statement or omission occurring at any time up to and including the Effective Date; provided, however, that solely with respect to Causes of Action that are unknown as of the Petition Date, nothing in this Section 11.3(e) shall be construed to release any Person from liability for willful misconduct or gross negligence as determined by a Final Order.*

**(f)** **Releases by Holders of Claims and Interests**. *Each Person that receives any payment under the Plan and does not elect to opt-out of the releases set forth in Section 11.3(f) of the Plan on such Person's ballot shall, solely in its capacity as a Claimant, for itself and its respective shareholders, officers, directors, managers, employees, members, agents, advisors, accountants, attorneys, representatives, successors, heirs, executors, administrators and assigns, in each case solely in their capacity as such, be deemed to have released the Creditor Released Parties from any and all claims, Causes of Action, acts, facts, transactions, occurrences, statements or omissions that arise out of or relate in any way to Arena Media Networks, LLC, the Chapter 11 Case, the Debtor, the Plan, the Disclosure Statement or the BNYH Loan Agreement occurring at any time up to and including the Effective Date that such Person would have been legally entitled to assert; and be deemed to have released the Debtor, and the Debtor's officers, directors, members, financial advisors, accountants, attorneys, employees, agents, successors and assigns and any other Person or Entity acting on the Debtor's behalf in each case solely in their capacity as such, Parties from any and all claims, Causes of Action, acts, facts, transactions, occurrences, statements or omissions that arise out of or relate in any way to Arena Media Networks, LLC, the Chapter 11 Case, the Debtor, the Plan, the Disclosure Statement arising on or after the Petition Date, except for acts or failures to act that constitute willful misconduct or gross negligence, provided, however, that solely with respect to any Causes of Action that are unknown as of the Petition Date, nothing in this Section 11.3(f) of the Plan shall be construed to release any Person from liability for willful misconduct or gross negligence as determined by a Final Order.*

*Each Person to which Section 11.3(f) of the Plan applies shall be deemed to have granted the releases set forth in Section 11.3(f) of the Plan notwithstanding that such Person may hereafter discover facts in addition to, or different from, those which such Person now knows or believes to be true, and without regard to the subsequent discovery or existence of such different*

*or additional facts, and such Person expressly waives any and all rights that such Person or Entity may have under any statute or common law principle.*

*If a holder of an Allowed Claim casts a ballot and elects to opt-out of the releases set forth in section 11.3(f) of the Plan, such holder shall receive no distribution under the Plan, and such distribution shall instead be allocated to General Unsecured Creditors who have not opted out of such releases and shall be allocated and distributed to such creditors Pro Rata.*

*As described above, the Plan Fund is comprised of the collateral of the Creditor Released Parties. The Creditor Released Parties have consented to the distribution of their collateral to unsecured creditors, on the condition that any unsecured creditor receiving a distribution release the Creditor Released Parties as described in Section 11.3(f) of the Plan.*

**11.4    Binding Effect.**  Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against, or Equity Interest in, the Debtor and its respective successors and assigns, whether or not the Claim or Equity Interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

**11.5    Term of Injunctions or Stays.**  Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the closing of the Chapter 11 Case.

## ARTICLE XII.

### RETENTION OF JURISDICTION

**12.1    Jurisdiction of Bankruptcy Court.**  The Bankruptcy Court shall retain jurisdiction of all matters arising under, arising out of, or related to, the Chapter 11 Case and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a) To hear and determine any motions for the assumption, assumption and assignment or rejection of executory contracts or unexpired leases and the allowance of any Claims resulting therefrom;

(b) To determine any and all pending adversary proceedings, applications and contested matters relating to the Chapter 11 Case;

(c) To hear and determine any objection to any Claims;

(d) To hear and determine Causes of Action;

(e) To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(f)  To issue such orders in aid of execution of the Plan to the extent authorized by section 1142 of the Bankruptcy Code;

(g)  To consider any modifications of the Plan, to cure any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(h)  To hear and determine all applications for compensation and reimbursement of expenses of professionals under sections 330, 331 and 503(b) of the Bankruptcy Code;

(i)  To hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan;

(j)  To recover all assets of the Debtor and property of the Estate, wherever located;

(k)  To hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code filed, or to be filed, with respect to tax returns for any and all taxable periods ending after the Commencement Date through the closing of the Chapter 11 Case);

(l)  To hear any other matter consistent with the provisions of the Bankruptcy Code; and

(m)  To enter a final decree closing the Chapter 11 Case.

### ARTICLE XIII.

#### MISCELLANEOUS PROVISIONS

**13.1    Dissolution of the Creditors Committee.**  On the Confirmation Date, the Creditors Committee shall be dissolved and shall have no further rights or obligations as relates to the Chapter 11 Case, except that the professionals retained by the Creditors Committee may file a final application for compensation and reimbursement of expenses within the time frames established by the Confirmation Order.

**13.2    Effectuating Documents and Further Transactions.**  Any officer of the Debtor is authorized and directed to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents and take such actions as the Debtor determines to be reasonably necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**13.3    Exemption from Transfer Taxes.**  Pursuant to section 1146(a) of the Bankruptcy Code, the assignment or surrender of any lease or sublease, or the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any deeds, bills of sale or assignments executed in connection with any disposition of assets

20

contemplated by the Plan (including transfers of assets held by the Disbursing Agent), shall not be subject to any stamp, real estate transfer, mortgage recording, sales, use or other similar tax.

**13.4    Pre-Confirmation Date Professional Fees and Expenses.**  Except as otherwise ordered by the Bankruptcy Court, each professional person or firm retained with approval by order of the Bankruptcy Court or requesting compensation in the Chapter 11 Case pursuant to sections 330 or 503(b) of the Bankruptcy Code, shall be required to file an application for an allowance of final compensation and reimbursement of expenses in the Chapter 11 Case incurred through the Confirmation Date on or before a date that is sixty (60) days after the Effective Date. Objections to any such application shall be filed on or before a date to be set by the Bankruptcy Court in the Confirmation Order.  The Disbursing Agent shall pay all pre-Confirmation Date fees and expenses of professionals retained by the Debtor or the Creditors Committee upon entry of an order allowing same from the Professional Fee Fund.

**13.5    Post-Confirmation Date Fees and Expenses.**

**(a)  Fees and Expenses of Professionals After the Confirmation Date.**  After the Confirmation Date, the Disbursing Agent shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay from the Professional Fee Fund the reasonable fees and expenses, incurred after the Confirmation Date, of the professional persons employed by the Debtor or Disbursing Agent in connection with the implementation and consummation of the Plan, the Claims reconciliation process and any other matters as to which such professionals may be engaged.  The fees and expenses of such professionals shall be paid within ten (10) Business Days after submission of a detailed invoice therefor.  If the Debtor disputes the reasonableness of any such invoice, the Debtor shall timely pay the undisputed portion of such invoice, and the Debtor or the affected professional may submit such dispute to the Bankruptcy Court for a determination of the reasonableness of such portion of the disputed invoice.

**13.6    Payment of Statutory Fees.**  All fees payable pursuant to section 1930 of title 28, United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on or before the Effective Date.

**13.7    Modification of Plan.**  The Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan at any time prior to the entry of the Confirmation Order.  After the entry of the Confirmation Order, upon a Bankruptcy Court order issued after appropriate notice and a hearing, the Debtor may amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code to  remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.  A holder of an Allowed Claim that is deemed to have accepted the Plan shall be deemed to have accepted the Plan as modified if the proposed modification does not materially and adversely change the treatment of the Claim of such holder.

**13.8    Withdrawal or Revocation.**  The Debtor may withdraw or revoke the Plan at any time prior to the Confirmation Date.  If the Debtor revokes or withdraw the Plan prior to the Confirmation Date, or if the Confirmation Date does not occur, then the Plan shall be deemed

21

null and void.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claim by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any other person in any further proceedings involving the Debtor.

**13.9    Courts of Competent Jurisdiction.**  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal or failure of jurisdiction shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

**13.10    Notices.**  Any notices to or requests of the Debtor by parties in interest under or in connection with the Plan shall be in writing and served either by (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery or (c) reputable overnight delivery service, all charges prepaid, and shall be deemed to have been given when received by the following parties:

> Arena Media Networks, LLC
> c/o Access 360 Media, Inc.
> 44 East 30th Street, 9th Floor
> New York, New York 10016
> (212) 779-2021
> Attn: Jim McDade

> *with copies to (which shall not constitute service):*

> KLESTADT & WINTERS, LLP
> Attorneys for the Debtor and Debtor in Possession
> 292 Madison Avenue, 17th Floor
> New York, New York  10017
> (212) 972-3000
> Attn:   Ian R. Winters
>          Joseph C. Corneau

**13.11    Severability.**  In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that any provision of the Plan other than Section 11.3(f) is invalid, void or unenforceable, the Bankruptcy Court shall, with the consent of the Debtor, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that Section 11.3(f) of the Plan is invalid, void or unenforceable, the Plan shall be withdrawn as unconfirmable for lack of funding. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**13.12    Governing Law.**  Except to the extent the Bankruptcy Code or Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York without giving effect to the principles of conflicts of law thereof.

**13.13    Headings.**  Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

**13.14    Exhibits.**  All Exhibits and Schedules to the Plan are incorporated into and are a part of the Plan as if set forth in full herein.

**13.15    Successors and Assigns.**  All the rights, benefits and obligations of any person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such person.

Dated: New York, New York
    October 29, 2010

ARENA MEDIA NETWORKS, LLC

By: /s/ Art Williams
Name: Art Williams
Title:   Chief Executive Officer

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| ARENA MEDIA NETWORKS, LLC, | : | Case No.  10-10667(BRL) |
| | : | |
| Debtor. | : | |
| | : | |


PLAN OF LIQUIDATION OF ARENA MEDIA NETWORKS, LLC
UNDER CHAPTER 11 OF THE BANKRUPTCY CODE


KLESTADT & WINTERS, LLP
Ian R. Winters
Joseph C. Corneau
292 Madison Avenue, 17th Floor
New York, New York 10017
(212) 972-3000

Attorneys for Debtor and
Debtor in Possession


Dated:  New York, New York
          October 29, 2010